KAPLAN FOX & KILSHEIMER LLP
Laurence D. King (SBN 206423)
*lking@kaplanfox.com*
Mario M. Choi (SBN 243409)
*mchoi@kaplanfox.com*
350 Sansome Street, Suite 400
San Francisco, CA 94104
Telephone: (415) 772-4700
Facsimile: (415) 772-4709

KAPLAN FOX & KILSHEIMER LLP
Justin B. Farar (SBN 211556)
*jfarar@kaplanfox.com*
12400 Wilshire Boulevard, Suite 820
Los Angeles, CA 90025
Telephone: (310) 575-8604
Facsimile: (310) 444-1913

KAPLAN FOX & KILSHEIMER LLP
Robert N. Kaplan (to be admitted *pro hac vice*)
*rkaplan@kaplanfox.com*
Frederic S. Fox (to be admitted *pro hac vice*)
*ffox@kaplanfox.com*
Jeffrey P. Campisi (to be admitted *pro hac vice*)
*jcampisi@kaplanfox.com*
Jason A. Uris (to be admitted *pro hac vice*)
*juris@kaplanfox.com*
850 Third Avenue, 14th Floor
New York, NY 10022
Tel: (212) 687-1980
Fax: (212) 687-7714

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEON D. MILBECK, on behalf of himself and all others similarly situated,<br><br>                    Plaintiff,<br><br>        v.<br><br>TRUECAR, INC. and MICHAEL GUTHRIE,<br><br>                    Defendants. | Case No.  18-cv-2612<br><br>__CLASS ACTION__<br><br>__CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS__<br><br>__JURY TRIAL DEMANDED__ |

Plaintiff Leon D. Milbeck ("Plaintiff"), by his attorneys, on behalf of himself and all others similarly situated, alleges the following based upon the investigation of Plaintiff's counsel, except as to allegations specifically pertaining to Plaintiff, which are based on personal knowledge. The investigation of counsel included, among other things, a review of TrueCar, Inc. ("TrueCar" or the "Company") public filings with the United States Securities and Exchange Commission ("SEC"), press releases issued by the Company, media, news and analyst reports about the Company, conference calls with Company executives and investors, and other publicly available data, including, but not limited to, publicly available trading data relating to the price and trading volume of TrueCar common stock.

## I.     INTRODUCTION

1.      This action is a securities fraud action brought under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder by the SEC brought by Plaintiff on behalf of all persons and entities who purchased the publicly traded common stock of TrueCar from at least as early as February 16, 2017 through November 6, 2017, inclusive (the "Class Period").

2.      TrueCar develops and publishes an online automobile information and communication platform. The Company provides data and price reports for new and used cars, and provides a platform for car dealers to communicate with consumers. TrueCar operates a company-branded platform that can be accessed directly, and also customizes and operates its platform on a co-branded basis for many affinity group marketing partners, including financial institutions, such as the United Services Automobile Association ("USAA"), membership-based organizations such as Consumer Reports, and employee buying programs for large enterprises such as IBM and WalMart. TrueCar's platform enables users to obtain market-based pricing data on new and used cars, and to connect with its network of TrueCar Certified Dealers. The platform also enables automobile manufacturers, or

OEMs, to connect with TrueCar users during the purchase process to deliver targeted incentives to consumers.

3.     The Company's single largest source of unique visitors and unit sales from affinity group marketing partners is from its relationship with USAA, a related party that currently owns approximately 9% of TrueCar's outstanding common stock.   Therefore, USAA has a significant influence on TrueCar's financial performance.   USAA is an institution that serves current and former military members and their families.

4.     The majority of TrueCar's revenues (over 90%) are transaction revenue that is either based on a fee per vehicle sold or in the form of a subscription arrangement.   The subscription arrangements can be a flat rate subscription or a subscription for which TrueCar guarantees a dealer a minimum number of sales or introductions.  If the minimum is not met TrueCar gives a credit to the dealer.

5.     During the Class Period the Company made numerous positive statements concerning the Company's prospects and growth, while failing to disclose negative developments related to USAA, its largest source of revenue.

6.     On November 6, after missing on guidance, the Company disclosed that USAA had made significant changes to its website during the Class period that had a material adverse effect on the volume of purchases generated by USAA.

7.     On this news, TrueCar's shares declined by $5.76 per share, or 35.25%, to close at $10.58 per share on November 7, 2017 on heavy trading volume.

8.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common stock, Plaintiff and other Class members have suffered significant losses and damages.

## II.     JURISDICTION AND VENUE

9.     The claims asserted arise under Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder.  Jurisdiction is conferred by

1   Section 27 of the Exchange Act.  Venue is proper in this district throughout the

2   Class Period and Defendants made materially false and misleading representations

3   to investors that were disseminated to investors in this District.

4        10.   In connection with the facts and omissions alleged in this complaint,

5   Defendants, directly or indirectly, used the means and instrumentalities of interstate

6   commerce, including, but not limited to, the mails, interstate telephone

7   communications, and the facilities of the national securities markets.

8   **III.   PARTIES**

9        11.   Plaintiff purchased TrueCar common stock as detailed in the

10   certification attached hereto and was damaged thereby.

11        12.   TrueCar is incorporated in Delaware and its principal executive offices

12   are at 120 Broadway, Suite 200, Santa Monica, CA 90401. TrueCar's common

13   stock trades on the NASDAQ Stock Market ("NASDAQ") under the symbol

14   "TRUE."

15        13.   Defendant Michael Guthrie ("Guthrie") was the Chief Financial

16   Officer ("CFO") of TrueCar at all relevant times.

17        14.   Defendants TrueCar, and Guthrie are collectively referred to as

18   "Defendants".

19        15.   Guthrie, because of his position with the Company, possessed the

20   power and authority to control the contents of TrueCar's press releases, SEC filings

21   and presentations to securities analysts, money and portfolio managers and

22   institutional investors, *i.e.*, the market.  Guthrie was provided with copies of the

23   Company's press releases and SEC filings alleged herein to be misleading prior to

24   or shortly after their issuance and had the ability and opportunity to prevent their

25   issuance or cause them to be corrected.  Because of his position and access to

26   material non-public information available to him but not to the public, Guthrie

27   knew that the adverse facts specified herein had not been disclosed to and were

28

being concealed from the public and that the positive representations which were being made were then materially false and misleading.

## IV.   CLASS ACTION ALLEGATIONS

16.   Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of a class of all persons and entities who purchased the publicly traded common stock of TrueCar from at least as early as February 16, 2017 through November 6, 2017, inclusive (the "Class Period").

17.   The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at the present time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds of members of the Class located throughout the United States.  As of February 22, 2018, TrueCar had over 100 million shares of common stock outstanding.

18.   Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and all members of the Class have sustained damages because of Defendants' unlawful activities alleged herein.  Plaintiff has retained counsel competent and experienced in class and securities litigation and intends to pursue this action vigorously.  The interests of the Class will be fairly and adequately protected by Plaintiff.  Plaintiff has no interests which are contrary to or in conflict with those of the Class that Plaintiff seeks to represent.

## V.   FALSE AND MISLEADING STATEMENTS

19.   On February 16, 2017 the Company issued a press release entitled "TrueCar Reports Fourth Quarter and Full Year 2016 Financial Results."  The Press Release stated the following regarding the Company's future prospects and growth:

> . . . We are excited about re-accelerating our top-line growth while also improving our margins.  . . . [The Company is] very confident that we now clearly understand and have our hands placed securely on the

4

practical levers that we believe will enable us to continue to drive double-digit rates of unit and revenue growth for some time.

The Press Release also quoted Guthrie stating:

We are pleased with the financial results in the fourth quarter of 2016 . . .  We have set the stage for strong growth and margin expansion over the next few years.

20.    On February 16, 2017 Defendants conducted a conference call with investors.  On the conference call Guthrie made the following statements regarding USAA and the Company's future prospects and growth:

**Michael Guthrie** - *CFO*

. . . You look at the USAA channel, we had great growth in the fourth quarter.  We had a record in the month of December.  And as I said in the call, we're 11 years into the partnership and still think there is just quite a bit that we can do together with our partners at USAA, to continue to make car buying better and better for their members. And so, even though that's a very large channel, we still look at the penetration rates there and we know that they're reasonably low, both on new car and used car. So there's much more work to do there.

21.    On February 28, 2017, at a JMP Securities Technology conference, the Company made the following statement regarding USAA and the Company's future prospects and growth:

. . . And as we really look at where the unit growth comes from next year, we absolutely expect all of our channels to grow and grow nicely, TrueCar-branded, USAA.

22.    On or about January 19, 2017, TrueCar filed with the SEC a Form S-3 Registration Statement (the "Registration Statement").  The Registration Statement became effective on February 7, 2017.

23.    On April 26, 2017, TrueCar entered into an underwriting agreement providing for the offering and sale by the Company and certain selling stockholders of 9,000,000 shares of common stock, plus 1,350,000 shares of common stock in connection with the underwriters' option to purchase additional shares, at $16.50 (the "Offering").  The Company sold a total of 1,150,000 shares in the Offering. The offering closed on May 2, 2017 and was made pursuant to the Registration Statement and a prospectus supplement thereunder (the "Prospectus"), which forms part of the Registration Statement, filed with the SEC.

24.    In the Offering, USAA sold 2,723,777 of its 12,175,333 beneficially owned shares, reducing its beneficial ownership in the Company from 13.6% to 10.4%.  USAA also sold an additional 408,566 shares in connection with the underwriters' exercise in full of their overallotment option to purchase additional shares of common stock.

25.    On May 9, 2017 the Company issued a press release entitled "TrueCar Reports First Quarter 2017 Financial Results."  The Press Release quotes defendant Guthrie stating the following regarding the Company's future prospects and growth:

> After just completing our successful public offering, we are pleased with the financial results in the first quarter of fiscal 2017 and the momentum we are building as we head into the seasonally strongest part of our year.

26.    On May 9, 2017, Defendants conducted a conference call with investors.  On the conference call Guthrie made the following statements regarding the Company's future prospects and growth:

I'd also like to highlight that all this progress is being made while we are undertaking a major platform rebuild that is progressing well and will allow us to innovate more quickly.  While we still have plenty of work to do, I'm pleased to say that we are starting 2017 with significant momentum.

27.    Defendants' statements in paragraphs 19-21 and 25-26 above were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose: (1) that USAA had been planning significant changes to the website maintained by TrueCar that would have a material adverse effect on the volume of purchases generated by USAA; (2) that USAA had made significant changes to the website maintained by TrueCar that would have a material adverse effect on the volume of purchases generated by USAA; and (3) that, as a result of the foregoing, Defendants' statements about TrueCar's business, operations, and prospects, were materially false and/or misleading and/or lacked a reasonable basis.

28.    On August 8, 2017, the Company issued a press release entitled "TrueCar Reports Second Quarter 2017 Financial Results."  The Press Release stated the following regarding the Company's future prospects and growth:

The momentum that we have been building over the past few quarters at TrueCar is continuing quite nicely . . .  We're growing well; we're delivering value to consumers, deals and manufacturers; we're expanding our business; and we're producing operating leverage all while making key investments for the long term.

29.    On August 8, 2017 Defendants conducted a conference call with investors.  On the August 8, 2017 conference call Guthrie made the following statement regarding the Company's growth and expected Q3 units sold:

And finally, we are already seeing signs of high unit growth rates as our July results come in. As a result, we expect Q3 units to be in the range of [265,000 to 270,000] or 20% to 22% year-over-year growth.

30.     However, along with these bullish projections, on August 8, 2017 Defendants lowered third quarter guidance for a segment of TrueCar's business. Following this news, TrueCar's shares declined by $3.77 per share, or 19.32%, to close at $15.78 per share on August 10, 2017 on heavy trading volume.

31.     Defendants' statements in paragraphs 28-30 above were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose: (1) that USAA had been planning significant changes to its website that would have a material adverse effect on the volume of purchases generated by USAA; (2) that USAA made significant changes to its website that would have a material adverse effect on the volume of purchases generated by USAA; (3) that the changes to USAA's website maintained by TrueCar caused a material adverse effect on the volume of purchases generated by USAA; and (4) that, as a result of the foregoing, Defendants' statements about TrueCar's business, operations, and prospects, were materially false and/or misleading and/or lacked a reasonable basis.

## VI.    THE TRUTH BEGINS TO EMERGE

32.     On November 6, 2017 the Company issued a press release entitled "TrueCar Reports Third Quarter 2017 Financial Results."  In the press release the company reported 253,527 units sold, missing previous guidance of 265,000 to 270,000 units.

33.     On November 6, 2017, Defendants conducted a conference call with investors.  On the conference call the Company made the following statements:

. . . Recently, USAA launched a significant website redesign. USAA's mission is to facilitate the financial security of its members, associates and their families by providing a full range of highly competitive financial products and services. In doing so, USAA seeks to be the provider of choice for the military community.

Because the car represents a large financial commitment, USAA wants to ensure that their members receive the best possible advice before entering into the purchase or lease of a new or used car.  In order to do that, the new USAA Car Buying experience has introduced several new steps in the process and new content related to total cost of ownership before the member is linked to the Car Buying Service powered by TrueCar.

It is important to note that USAA and we are working on site optimization and that USAA is supporting their Car Buying experience with a significant marketing campaign that started in early Q4.  For Q3, however, we saw a decline in traffic, prospects and units on USAA.  We support USAA's mission and believe that together we can make the needed improvements to produce great results for the Car Buying Service while ensuring that members are better served.   In addition, we have begun the annual planning process with USAA, and both of us expect to grow the program significantly in 2018.

* * *

Units in the quarter totaled 253,527, up 15% year-over-year.   The TrueCar branded channel generated 108,376 units, up 12%. Partners, driven by strong growth at Chase and Sam's Club, contributed 80,310

units, up 45%. And USAA, given the challenges of their new experience, produced 64,841 units, down 5% from last year.

34.    On the November 6, 2017 conference call the Company made the following statement in response to a question about the timing and impact of the changes made by USAA:

> . . . USAA has made these changes as a result of their desire to provide more financial advice to their members when they're making a big purchase like buying a car.  So the changes in the user experience involved inserting some steps, questions and also content related to vehicle affordability and cost of ownership.

> So we saw these coming.  It wasn't like we were blind to them.  And after we saw them launched, we together realized that they were having a downward effect on our numbers.  And so together, we've been working since then to mitigate the decline and find improvements to get us back into the normal sort of growth trend with USAA that we've had for many, many years, double-digit growth consistently. . . .

35.    Following this news, TrueCar's shares declined by $5.76 per share, or 35.25%, to close at $10.58 per share on November 7, 2017 on heavy trading volume.

**VII.   ADDITIONAL SCIENTER ALLEGATIONS**

36.    As alleged herein, defendants acted with scienter in that defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such

1  statements or documents as primary violations of the federal securities laws. As set

2  forth elsewhere herein in detail, Guthrie, by virtue of his receipt of information

3  reflecting the true facts regarding TrueCar, its control over, and/or receipt and/or

4  modification of TrueCar's allegedly materially misleading misstatements and/or his

5  associations with the Company which made him privy to confidential proprietary

6  information concerning TrueCar, participated in the fraudulent scheme alleged

7  herein.

8      37.    Defendants knew or recklessly disregarded the falsity and misleading

9  nature of the information which they caused to be disseminated to the investing

10  public. The ongoing fraudulent scheme described in this complaint could not have

11  been perpetrated over a substantial period of time, as has occurred, without the

12  knowledge and complicity of the personnel at the highest level of the Company,

13  including Guthrie.

14      38.    Defendants had the motive and opportunity to perpetrate the fraudulent

15  scheme and course of business described herein because Guthrie was one of the

16  most senior officers of TrueCar, issued statements and press releases on behalf of

17  TrueCar and had the opportunity to commit the fraud alleged herein.

18      39.    Defendants were motivated to conceal the fraud alleged herein in order

19  to raise capital for the Company, and for the benefit of certain existing stockholders

20  of the Company. On April 26, 2017, TrueCar announced an offering of 9,000,000

21  shares of common stock at a price of $16.50 per share ($148.50 million), and an

22  additional 1,350,000 shares ($22.275 million) in connection with the underwriters'

23  option to purchase additional shares. The Offering closed on May 2, 2017.

24      40.    From July 26, 2017 through August 4, 2017, before the Company

25  lowered guidance on August 8, 2017, defendant Guthrie sold 652,927 shares at an

26  average price of $18.88 per share, for proceeds of $12,327,261.80.

27

28

11

41. On February 1, 2018, the Company announced that on January 28, 2018, defendant Guthrie notified the Company that he would be resigning from his position as CFO, effective February 1, 2018.

**VIII. LOSS CAUSATION/ECONOMIC LOSS**

42. During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated TrueCar's common share price and operated as a fraud or deceit on Class Period purchasers of TrueCar common stock by misrepresenting the Company's operating condition and future business prospects. Defendants achieved this by making positive statements about TrueCar's business and financial results while they knew, or disregarded with deliberate recklessness, the adverse facts alleged above.

43. Later, however, when Defendants' prior misrepresentations were disclosed and became apparent to the market, the price of TrueCar's common stock fell precipitously as the prior artificial inflation came out of TrueCar's share price.

44. As a result of their purchases of TrueCar common stock during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages under the federal securities laws. At the close of the market on March 28, 2018, TrueCar's common stock was trading at $9.18 per share.

45. As a direct result of the public revelations regarding the truth about the condition of TrueCar's business and the negative adverse factors that had been impacting TrueCar's business during the Class Period, the price of TrueCar's common stock materially declined. This drop removed the inflation from TrueCar's share price, causing real economic loss to investors who purchased TrueCar common stock during the Class Period.

46. The decline in TrueCar's share price was a direct result of the nature and extent of Defendants' fraud finally being revealed to investors and the market. The timing and magnitude of TrueCar's share price declines negate any inference that the loss suffered by Plaintiff and other Class members was caused by changed

market conditions, macroeconomic or industry factors, or Company-specific facts unrelated to the Defendants' fraudulent conduct.

## IX.   FRAUD-ON-THE-MARKET DOCTRINE

47.   At all relevant times, the market for TrueCar's common stock was an efficient market for the following reasons, among others:

(a)   The Company's common stock met the requirements for public listing and were listed and actively traded on the Nasdaq, a highly efficient market;

(b)   As a regulated issuer, the Company filed periodic public reports with the SEC; and

(c)   The Company regularly issued press releases which were carried by national news wires.  Each of these releases was publicly available and entered the public marketplace.

48.   As a result, the market for the Company's publicly traded common stock promptly digested current information with respect to TrueCar from all publicly available sources and reflected such information in the price of the Company's common stock.   Under these circumstances, all purchasers of the Company's publicly traded common stock during the Class Period suffered similar injury through their purchase of the publicly traded common stock of TrueCar at artificially inflated prices and a presumption of reliance applies.

## X.   NO SAFE HARBOR

49.   The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint.  Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made.  To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded

herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of TrueCar who knew that those statements were false when made.

## XI.   RELIEF REQUESTED

<u>FIRST CLAIM FOR RELIEF</u>
For Violation of Section 10(b) of the 1934 Act
and Rule 10b-5 Against All Defendants

50.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

51.    During the Class Period, Defendants disseminated or approved the false statements specified above, which they knew or recklessly disregarded were materially false and misleading in that they contained material misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

52.    Defendants violated Section 10(b) of the 1934 Act and Rule 10b-5 in that they:

(a)    Employed devices, schemes and artifices to defraud;

(b)    Made untrue statements of material facts or omitted to state material facts necessary in order to make statements made, in light of the circumstances under which they were made not misleading; or

(c)    Engaged in acts, practices, and a course of business that operated as a fraud or deceit upon Plaintiff and others similarly situated in connection with their purchases of TrueCar's publicly traded common stock during the Class Period.

53.    Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for TrueCar's publicly traded common stock.  Plaintiff and the Class would not have purchased TrueCar's

1   common stock at the prices they paid, or at all, if they had been aware that the

2   market prices had been artificially and falsely inflated by Defendants' misleading

3   statements.

4   54.   As a direct and proximate result of these Defendants' wrongful

5   conduct, Plaintiff and the other members of the Class suffered damages in

6   connection with their purchases of TrueCar's common stock during the Class

7   Period.

8                          **SECOND CLAIM FOR RELIEF**
                   **For Violation of Section 20(a) of the 1934 Act**
9                                **Against Guthrie**

10  55.   Plaintiff repeats and re-alleges each and every allegation contained

11  above as if full set forth herein.

12  56.   Guthrie acted as a controlling person of TrueCar within the meaning of

13  Section 20(a) of the Exchange Act as alleged herein.  By virtue of his high-level

14  position, and his ownership and contractual rights, participation in and/or awareness

15  of the Company's operations and/or intimate knowledge of the statements filed by

16  the Company with the SEC and disseminated to the investing public, Guthrie had

17  the power to influence and control and did influence and control, directly or

18  indirectly, the decision-making of the Company, including the content and

19  dissemination of the various statements that Plaintiff contends are false and

20  misleading.  Guthrie was provided with or had unlimited access to copies of the

21  Company's reports, press releases, public filings and other statements alleged by

22  Plaintiff to be misleading prior to and/or shortly after these statements were issued

23  and had the ability to prevent the issuance of the statements or cause the statements

24  to be corrected.

25  57.   In particular, Guthrie had direct and supervisory involvement in the

26  day-to-day operations of the Company and, therefore, are presumed to have had the

27  power to control or influence the particular transactions giving rise to the securities

28  violations as alleged herein, and exercised the same.

58.    As set forth above, TrueCar and Guthrie each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their positions each as a controlling person, Guthrie is liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of TrueCar's and Guthrie's wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

## XI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

A.    Declaring this action to be a proper class action;

B.    Awarding damages, including interest; awarding reasonable costs, including attorneys' fees; and

C.    Such equitable/injunctive relief as the Court may deem proper.

## XII.   JURY DEMAND

Plaintiff demands a trial by jury.

Dated: March 30, 2018        KAPLAN FOX & KILSHEIMER LLP

By:   s/ *Laurence D. King*
Laurence D. King

Laurence D. King (SBN 206423)
*lking@kaplanfox.com*
Mario M. Choi (SBN 243409)
*mchoi@kaplanfox.com*
350 Sansome Street, Suite 400
San Francisco, CA  94104
Telephone: (415) 772-4700
Facsimile: (415) 772-4709

KAPLAN FOX & KILSHEIMER LLP
Justin B. Farar (SBN 211556)
*jfarar@kaplanfox.com*
12400 Wilshire Boulevard, Suite 820
Los Angeles, CA  90025
Telephone: (310) 575-8604
Facsimile: (310) 444-1913

16

1 KAPLAN FOX & KILSHEIMER LLP
Robert N. Kaplan (to be admitted *pro hac vice*)
2 *rkaplan@kaplanfox.com*
Frederic S. Fox (to be admitted *pro hac vice*)
3 *ffox@kaplanfox.com*
Jeffrey P. Campisi (to be admitted *pro hac vice*)
4 *jcampisi@kaplanfox.com*
Jason A. Uris (to be admitted *pro hac vice*)
5 *juris@kaplanfox.com*
850 Third Avenue, 14th Floor
6 New York, NY 10022
Tel: (212) 687-1980
7 Fax: (212) 687-7714

8 *Attorneys for Plaintiff*

## CERTIFICATION

I, Leon D. Milbeck, hereby certify and swear as follows:

1. I have reviewed a complaint against TrueCar, Inc. alleging violations of the securities laws and authorize the filing of the complaint;

2. I am willing to serve as a representative party on behalf of a class, or to be a member of a group representing a class, including providing testimony at deposition and trial, if necessary;

3. I have not within the 3-year period preceding the date hereof sought to serve, or served, as a representative party on behalf of a class in an action brought under the federal securities laws;

4. My transactions in TrueCar's common stock during the proposed class period are set forth in Schedule A, which is attached hereto.

5. I did not purchase TrueCar's common stock at the direction of my counsel or in order to participate in any private action under the federal securities laws; and

6. I will not accept any payment for serving as a representative party on behalf of a class beyond my pro rata share of any recovery, except as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Date: ___3 | 27___, 2018

_____
Leon D. Milbeck

## Schedule A

### <u>Leon D. Milbeck Transactions in TrueCar,</u>

**Account 1**

| Security | Transaction | Trade Date | Shares | Price |
|---|---|---|---|---|
| TRUECAR INC | Sell | 5/2/2017 | (1,000) | $17.52 |
| TRUECAR INC | Buy | 5/3/2017 | 1,015 | $17.25 |
| TRUECAR INC | Sell | 6/8/2017 | (838) | $19.13 |
| TRUECAR INC | Sell | 6/8/2017 | (177) | $19.13 |
| TRUECAR INC | Buy | 6/9/2017 | 1,008 | $19.25 |
| TRUECAR INC | Buy | 7/7/2017 | 1,010 | $20.25 |
| TRUECAR INC | Sell | 7/7/2017 | (1,008) | $20.30 |
| TRUECAR INC | Sell | 7/10/2017 | (595) | $20.47 |
| TRUECAR INC | Sell | 7/10/2017 | (415) | $20.50 |
| TRUECAR INC | Buy | 7/17/2017 | 973 | $21.25 |

**Account 2**

| Security | Transaction | Trade Date | Shares | Price |
|---|---|---|---|---|
| TRUECAR INC | Buy | 2/16/2017 | 3,185 | $13.19 |
| TRUECAR INC | Buy | 2/16/2017 | 100 | $13.18 |
| TRUECAR INC | Buy | 2/16/2017 | 100 | $13.18 |
| TRUECAR INC | Buy | 2/16/2017 | 100 | $13.17 |
| TRUECAR INC | Buy | 2/16/2017 | 200 | $13.18 |
| TRUECAR INC | Buy | 2/16/2017 | 100 | $13.17 |
| TRUECAR INC | Sell | 5/2/2017 | (3,785) | $17.52 |
| TRUECAR INC | Buy | 5/3/2017 | 3,848 | $17.25 |
| TRUECAR INC | Sell | 6/8/2017 | (3,848) | $19.13 |
| TRUECAR INC | Buy | 6/9/2017 | 3,824 | $19.25 |
| TRUECAR INC | Buy | 7/7/2017 | 3,833 | $20.25 |
| TRUECAR INC | Sell | 7/7/2017 | (2,600) | $20.30 |
| TRUECAR INC | Sell | 7/7/2017 | (124) | $20.29 |
| TRUECAR INC | Sell | 7/7/2017 | (100) | $20.30 |
| TRUECAR INC | Sell | 7/7/2017 | (100) | $20.29 |
| TRUECAR INC | Sell | 7/7/2017 | (200) | $20.30 |
| TRUECAR INC | Sell | 7/7/2017 | (300) | $20.29 |
| TRUECAR INC | Sell | 7/7/2017 | (400) | $20.30 |
| TRUECAR INC | Sell | 7/10/2017 | (1,982) | $20.44 |
| TRUECAR INC | Sell | 7/10/2017 | (700) | $20.45 |
| TRUECAR INC | Sell | 7/10/2017 | (710) | $20.46 |
| TRUECAR INC | Sell | 7/10/2017 | (340) | $20.47 |
| TRUECAR INC | Sell | 7/10/2017 | (100) | $20.47 |
| TRUECAR INC | Sell | 7/10/2017 | (1) | $20.50 |
| TRUECAR INC | Buy | 7/17/2017 | 3,688 | $21.25 |

**Account 3**

| Security | Transaction | Trade Date | Shares | Price |
|---|---|---|---|---|
| TRUECAR INC COM | Sell | 05/02/2017 | (519) | $17.53 |
| TRUECAR INC COM | Buy | 05/03/2017 | 525 | $17.25 |
| TRUECAR INC COM | Buy | 05/08/2017 | 59 | $17.25 |
| TRUECAR INC COM | Sell | 06/08/2017 | (584) | $19.13 |
| TRUECAR INC COM | Buy | 06/09/2017 | 580 | $19.25 |
| TRUECAR INC COM | Buy | 07/07/2017 | 581 | $20.25 |
| TRUECAR INC COM | Sell | 07/07/2017 | (580) | $20.30 |
| TRUECAR INC COM | Sell | 07/10/2017 | (12) | $20.47 |
| TRUECAR INC COM | Sell | 07/10/2017 | (569) | $20.49 |
| TRUECAR INC COM | Buy | 07/17/2017 | 559 | $21.25 |

**Account 4**

| Security | Transaction | Trade Date | Shares | Price |
|---|---|---|---|---|
| TRUECAR INC COM | Sell | 05/02/2017 | (345) | $17.52 |
| TRUECAR INC COM | Buy | 05/03/2017 | 350 | $17.25 |
| TRUECAR INC COM | Buy | 05/08/2017 | 58 | $17.25 |
| TRUECAR INC COM | Sell | 06/08/2017 | (408) | $19.13 |
| TRUECAR INC COM | Buy | 06/09/2017 | 405 | $19.25 |
| TRUECAR INC COM | Buy | 07/07/2017 | 405 | $20.25 |
| TRUECAR INC COM | Sell | 07/07/2017 | (405) | $20.30 |
| TRUECAR INC COM | Sell | 07/10/2017 | (405) | $20.48 |
| TRUECAR INC COM | Buy | 07/17/2017 | 390 | $21.25 |