**SAXENA WHITE P.A.**
Maya Saxena
Joseph E. White, III
Lester R. Hooker (241590)
150 E. Palmetto Park Road, Suite 600
Boca Raton, FL 33432
Telephone:   (561) 394-3399
Facsimile:   (561) 394-3382
E-mail: msaxena@saxenawhite.com
         jwhite@saxenawhite.com
         lhooker@saxenawhite.com

-and-

Steven B. Singer
10 Bank Street, 8th Floor
White Plains, NY 10606
Telephone:   (914) 437-8551
Facsimile:   (888) 631-3611
E-mail: ssinger@saxenawhite.com

*Lead Counsel for Lead Plaintiff
and the Class*

**KAPLAN FOX &
KILSHEIMER LLP**
Justin B. Farar (SBN 211556)
12400 Wilshire Boulevard
Suite 820
Los Angeles, CA 90025
Telephone: 310.575.8604
Facsimile: 310.444.1913
E-mail: jfarar@kaplanfox.com

-and-

Laurence D. King (SBN 206423)
Mario M. Choi (SBN 243409)
350 Sansome Street, Suite 400
San Francisco, CA 94104
Telephone: 415.772.4700
Facsimile: 415.772.4707
Email: lking@kaplanfox.com
        mchoi@kaplanfox.com

*Liaison Counsel for Lead Plaintiff
and the Class*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

LEON D. MILBECK, on behalf of
himself and all others similarly situated

        Plaintiff,

    vs.

TRUECAR, INC., *et al.*,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. 2:18-cv-02612-SVW-AGR

<u>CLASS ACTION</u>

**LEAD PLAINTIFF'S
MEMORANDUM OF POINTS
AND AUTHORITIES IN
SUPPORT OF MOTION TO
COMPEL DEFENDANTS'
PRODUCTION OF SLACK
DATA AND TEXT MESSAGES**

Courtroom:  550
Honorable Alicia G. Rosenberg

## REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

I.      INTRODUCTION .........................................................................................1

II.     STATEMENT OF FACTS AND RELEVANT HISTORY ..........................3

        A.     The Nature of TrueCar's Affinity Partnership with USAA.................3

        B.     Defendants Refuse to Search "Slack".................................................4

        C.     Defendants Refuse to Search Text Messages .....................................5

III.    ARGUMENT .............................................................................................6

        A.     It is Indisputable That Information Exchanged through Slack and Via Text Messages is Highly Relevant to Plaintiff's Claims………..…………..7

        B.     Any Burden to Defendants is Self-Imposed and Consequently Should Be Rejected by the Court……………………………….……………………10

IV.     CONCLUSION .........................................................................................12

# <u>TABLE OF AUTHORITIES</u>

*Cases*                                                                Page(s)

*Calendar Research LLC v. StubHub, Inc. et al.*, 17-cv-4062-SVW-SSx,
    2019 WL 1581406 (C.D. Cal. March 14, 2019) ....................................................7


*Rules*

Fed. R. Civ. Pro. 26(b)(2)(B).................................................................................. 6-7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Pursuant to Rules 37(a)(3)(B)(iv) and 26(b)(1) and (2) of the Federal Rules of Civil Procedure, as indicated by the Court (*see* ECF No. 113), Lead Plaintiff Oklahoma Police Pension and Retirement Fund ("Lead Plaintiff" or "Plaintiff") seeks to compel: (i) Defendant TrueCar to produce Slack data responsive to Plaintiff's First Set of Requests for Production of Documents to All Defendants, dated February 8, 2019 (the "Requests"); and (ii) the Officer Defendants and Director Defendant Claus to produce text messages exchanged using personal devices responsive to the Requests.[1]

## I.  INTRODUCTION

Plaintiff seeks to compel Defendants' production of critically relevant information contained in two discovery sources within their possession, custody and control—namely, documents and communications that Defendants exchanged during the Class Period via Slack, a corporate messaging and networking platform, and text messages exchanged by the Officer Defendants and Director Defendant Claus.  Importantly, the fact that both of these sources are ripe with discoverable information has been confirmed by documents Defendants produced in discovery. For instance, discovery has revealed that:

---

[1] All capitalized terms are defined in the Amended Class Action Complaint (the "Complaint," ECF No. 47), unless otherwise defined herein. "¶" references refer to paragraphs of the Complaint.  All emphasis is added unless otherwise noted.

1    Defendants have flatly refused to search either of these discovery sources for
2    information responsive to Plaintiff's Requests.  However, it is indisputable that these
3    sources include discovery material that is highly relevant to Plaintiff's claims.
4    Indeed, during the telephonic discovery conference with the Court on April 17, 2019
5    concerning these discovery sources, Defendants readily admitted that but for the
6    purported burden they face due to the expedited pace of discovery in this action and
7    the August 6, 2019 trial date, Defendants would have searched for and produced
8    responsive information exchanged through Slack and via text messages.

9    Defendants' burden argument fails on multiple levels.  As discussed in more
10   detail below, any purported burden Defendants now claim to face is entirely of their
11   own making.  Defendants themselves obviously were aware ████████████████
12   ████████████████████████████████████████████████████
13   ████████████████████████████████████████  The initial
14   complaint in this action was filed in March 2018, and Plaintiff's amended
15   Complaint, which was filed in August 2018, specifically alleges that TrueCar used
16   Slack for such purposes during the Class Period.  ¶¶66, 68.  Significantly, Judge
17   Wilson set the August 2019 trial date nearly seven months ago during a scheduling
18   hearing held on October 2, 2018, and at that hearing, Judge Wilson specifically
19   warned that the action would proceed expeditiously and directed the parties to
20   "operate accordingly."   Nevertheless, Defendants failed to take any proactive
21   measures to temper any burden related to expeditiously producing discoverable
22   information exchanged through Slack or text messages.   Given these facts,
23   Defendants' claimed "burden" was entirely self-inflicted and their repeated refusal
24   to search these discovery sources is nothing more than a transparent attempt to
25   prevent Plaintiff from accessing indisputably relevant communications that speak to
26   the heart of this case. For these reasons, as further described below, Plaintiff's
27   motion to compel should be granted.
28

## II.    STATEMENT OF FACTS AND RELEVANT HISTORY

### A. The Nature of TrueCar's Affinity Partnership with USAA

TrueCar is an internet-based company that purports to give consumers the "true" price, or market price, for new and used cars. TrueCar's financial success depends on its ability to obtain web traffic, leading to sales of cars, or "units," from the Company's website, as well as from co-branded car buying websites TrueCar operates for members of its affinity partnership network. ¶3.

The most significant of these affinity partners is the United Services Automobile Association ("USAA"), whose co-branded car buying website with TrueCar (the "TC-USAA Website") accounted for nearly one-third of TrueCar's annual revenues. ¶30. While TrueCar was responsible for hosting, maintaining, and operating the TC-USAA Website—meaning TrueCar was necessarily directly involved in any updates or changes to the Website—USAA retained broad discretion over the content of that Website, including how it was promoted to USAA members. ¶¶5, 37. For this reason, TrueCar's SEC filings repeatedly warned investors that if USAA "de-emphasize[d]" the TC-USAA Website, "our revenue, business and financial results will be harmed." ¶37.

The Complaint alleges that, as of January 2017 at the latest, USAA informed Defendants that USAA wanted to implement later that year what TrueCar itself would later call a "significant website redesign" that would make it much more difficult for USAA members to access the car buying function on the TC-USAA Website. ¶6.  The Complaint also alleges that Company management notified TrueCar employees during internal meetings in January and February 2017 of this change and that the website redesign would profoundly and adversely impact TrueCar's financial results. ¶¶6, 39-49, 85.  Just two months later, TrueCar effectuated a secondary public offering of stock in which entities affiliated with certain of TrueCar's directors sold approximately $90 million of the Company's

stock.  ¶¶8, 59.  Shortly thereafter, Defendants Pierantoni and Guthrie collectively sold $15 million worth of TrueCar stock on the first day that they were allowed to do so.  ¶¶ 72, 73.

In June 2017, TrueCar implemented USAA's "significant website redesign" and, as predicted, TrueCar experienced an immediate and sharp decline in USAA member traffic and unit sales.  ¶¶75, 76.  Despite this reality, it was not until November 6, 2017, that investors finally learned the truth when TrueCar revealed it had dramatically redesigned the TC-USAA Website five months earlier, and that, instead of achieving unit growth in the "mid-20% range," USAA units had declined by 5% in the third quarter as a result.  ¶¶78, 79. Defendants further admitted that they "saw these changes coming," and that TrueCar experienced a substantial "shortfall" in USAA units by no later than August 2017.  ¶¶12, 103.  In response to these striking disclosures, TrueCar's stock plummeted by 35%, falling from $16.43 per share to $10.58 on November 7, 2017—wiping out over $580 million in market capitalization in just one day. ¶13.

On March 30, 2018, the initial complaint in this action was filed.  ECF No. 1. On August 24, 2018, Plaintiff filed its amended Complaint, which specifically included references to Defendants' communications via Slack.  ¶¶66, 68.  On February 5, 2019, Judge Wilson issued an Order denying Defendants' motion to dismiss Plaintiff's Complaint in its entirety.  ECF No. 93.  Pursuant to the Private Securities Litigation Reform Act, discovery was stayed during the pendency of the motion to dismiss.  Accordingly, on February 8, 2019, Plaintiff served its Requests on Defendants, seeking among other things all documents and communications concerning the TC-USAA Website redesign.

**B. Defendants Refuse to Search "Slack"**

The Complaint alleges that TrueCar utilized a messaging system called "Slack" for various business-related purposes during the Class Period, including to

discuss key metrics used to predict and track unit sales generated by the TC-USAA Website in real-time and to answer questions posed by Company employees regarding TrueCar's Class Period earnings releases.   ¶¶66, 68. Significantly, Defendants do not dispute that Slack was prominently used by TrueCar to exchange such information.

The Slack website, www.slack.com, describes Slack as a "collaboration hub" frequently used by corporations like TrueCar to facilitate communication about team projects, related events and other corporate actions.   Slack permits its users to collaborate both internally amongst members of a company as well as externally with employees of other companies.   Users can exchange information on Slack through direct or group messaging using what Slack refers to as "channels."   Slack also functions as a document share site.   According to its website, Slack facilitates collaboration by automatically saving all messages and documents exchanged on the application, which is "easily searchable" by Slack users.

Throughout the parties' meet and confer process, Plaintiff inquired whether Defendants planned to produce Slack data responsive to Plaintiff's Requests.   While Defendants agreed with Plaintiff that Slack was a relevant source of discovery in this case, they refused to produce Slack data, claiming that because of the fast paced discovery schedule doing so was disproportionate to the needs of the case.   When Plaintiff asked whether Defendants had made any effort to determine the extent of relevant materials contained on Slack—including whether the Officer Defendants frequently used Slack and whether TrueCar had created any USAA-dedicated Slack channels—Defendants replied that they could not answer these questions without first processing a voluminous amount of Slack data.   Shortly thereafter, the parties jointly submitted their dispute over the production of Slack data to the Court for review. *See* ECF Nos. 110, 113.

**C. Defendants Refuse to Search Text Messages**

1      Defendants also have refused to search and produce responsive

2  communications exchanged by the three Officer Defendants and Defendant Claus

3  via text messages, again claiming that—despite their relevance and the fact that

4  Plaintiff's final compromise position seeks production of text messages by only four

5  of the twenty-eight agreed-upon custodians—doing so here would be

6  disproportionate to the needs of the case.  Plaintiff initially took the position that, as

7  named parties in this case, each of the Individual Defendants was independently

8  legally obligated to search discovery sources within their possession, custody or

9  control for documents and information responsive to the Requests, but subsequently

10 proposed a series of compromises, each of which Defendants rejected.

11     In the end, Plaintiff proposed a final compromise: if Defendants would agree

12 either to (i) produce relevant text messages exchanged by the three Officer

13 Defendants and Defendant Claus; or (ii) represent in writing that none of these

14 Defendants used text messaging to communicate about TrueCar's USAA business

15 during the Class Period, Plaintiff would not seek relief from this Court. When

16 Defendants rejected even this reasonable compromise, the parties jointly submitted

17 this dispute to the Court.  *See* ECF Nos. 110, 113.

18 **III.  <u>ARGUMENT</u>**

19     In deciding Plaintiff's motion to compel production of information exchanged

20 through Slack and text messages responsive to Plaintiff's Request, the Court has

21 referred the parties to the standards set forth in Rule 26(b)(1) and (2) of the Federal

22 Rules of Civil Procedure.  *See* ECF No. 113.  Significantly, even if a party argues

23 that information is "not reasonably accessible because of undue burden or cost"

24 (Fed. R. Civ. Pro. 26(b)(2)(B)), "the court may nonetheless order discovery from

25 such sources if the requesting party shows good cause[.]"  *Id.*; *see also Calendar*

26 *Research LLC v. StubHub, Inc. et al.*, 17-cv-4062-SVW-SSx, 2019 WL 1581406, at

27

28

1   *3 (C.D. Cal. March 14, 2019) (granting plaintiffs' motion to compel individual

2   defendants to produce Slack data under these standards).

3       **A.    It is Indisputable That Information Exchanged through Slack and**

4             **Via Text Messages is Highly Relevant to Plaintiff's Claims**

5       As explained above, there is no dispute between the parties as to whether

6   information critical to Plaintiff's claims was exchanged through Slack and text

7   messages during the Class Period.  Moreover, discovery produced by Defendants in

8   this case ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

9   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

10  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

11  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

12  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

13  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

14  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

15      For instance, the Complaint alleges that USAA first informed TrueCar of its

16  plan to implement a "significant website redesign" in approximately January 2017.

17  ¶6. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

18  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

19  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

20  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

21  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Ex. 1.[2] ▓▓▓

22  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

23  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

24  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Ex. 2.

25

26

27  [2] Citations to "Ex.__" are to the exhibits attached to the declaration of Sara M.
    DiLeo, filed concurrently herewith.

28



Ex. 3.

³ *See* Exs. 4 ████████████; 5 ████████████. Significantly, these documents corroborate the allegations of paragraph 68 of the Complaint: "Significantly, CW 8 further stated that she attended a "fireside" Company-wide meeting in August 2017, which Defendant Perry attended, discussing the downward trend in user traffic to the USAA car buying website."

1

2

3

4

5

6

7                                         *See* Ex. 9

8

9

10

11

12

13

14

15

16

17

18

19   Ex. 10.

20

21                                                              *Id.*

22          Accordingly, discovery Defendants have already produced unequivocally

23   demonstrates that Defendants' Slack and text message communications during the

24   Class Period include highly relevant information that speak to foundational elements

25   _____

26   [4] Ex. 6; *see also* Ex. 7

27                                               ; Ex. 8

28

of Plaintiff's claims.  Importantly, Defendants do not dispute that the information Plaintiff seeks to compel is discoverable pursuant to Rule 26(b)(1).

### B.   Any Burden to Defendants is Self-Imposed and Consequently Should Be Rejected by the Court

Defendants' sole argument against production of these highly relevant materials is based on burden: Defendants contend that this information is not reasonably accessible because the efforts required to produce Slack data and text messages are too time consuming to accomplish and overly burdensome given the millions of pages of documents Defendants already have produced to date. However, any purported burden Defendants now face is entirely of their own doing, and Plaintiff should not be prejudiced by Defendants' calculated delay in collecting and reviewing what are indisputably relevant sources of discovery.



[5] And in all events, allegations in the Complaint filed in August 2018 clearly put Defendants on notice that TrueCar employees used Slack to discuss the TC-USAA Website redesign and other relevant events during the Class Period.  *See* ¶¶66, 68.

Even if that alone was not grounds enough to discard Defendants' burden claim, the clear direction from Judge Wilson during the October 2, 2018 hearing further reinforces Defendants' abject discovery failure here. During that hearing, Judge Wilson not only set a trial date of August 6, 2019, but he also indicated that Defendants' motion to dismiss the Complaint would likely be denied, and that given the rapid schedule, the parties should "operate accordingly":

> Let me give you fair warning that this case is going to have a beginning and an end. It has already had the beginning, and it will have an end, and it won't be as far down the road as you think it will be.
>
> So following a good rule and assuming, but not concluding, that the motions [to dismiss] will be denied -- I say that only for scheduling purposes -- I'm going to set a trial date, and the -- I'm going to set the trial for the first week in August . . . And while the court, of course, has to maintain some flexibility, <u>understand that that probably is going to be the trial date</u>; **so operate accordingly**.[6]

With respect to producing highly relevant Slack materials and text messages, Defendants completely failed to heed Judge Wilson's warning. Consequently, any burden associated with producing these materials at this juncture of the case is the direct result of Defendants' own tactical decisions, and it is Defendants' strategic delay that is the root cause of any burden Defendants now face. Plaintiff should not be prejudiced by Defendants' discovery failures regardless of whether or not they were part of a larger tactical strategy, and it is Defendants that should be the party obligated to endure any negative ramifications flowing from that decision.

---

[6] ECF No. 88-3, (October 2, 2018 Hr'g Trans. 23:10-24); *see also id.* 19:23-20:2 ("THE COURT:  On a motion to dismiss, and based upon your presentation, and you're well versed in the law, what chance do you have of dismissing a complaint with these kinds of allegations even if they will evaporate with discovery and scrutiny?").

1      Lastly, notwithstanding Defendants' abject failure to collect and produce

2  highly relevant documents and communications, there is still ample time for

3  Defendants to produce these materials.  At this time, there is no Court-ordered

4  deadline closing fact discovery and trial will not begin for another 14 weeks.

5  Moreover, if anything, the fact that Defendants have been able to produce

6  approximately 2.9 million pages of documents in slightly less than four weeks belies

7  Defendants' contentions regarding their inability to produce this critical information

8  within the time remaining in advance of trial.

9      For all of these reasons, Plaintiff respectfully submits that the Court should

10  grant Plaintiff's motion to compel in its entirety.

11  **IV.**        **CONCLUSION**

12      For the foregoing reasons, Lead Plaintiff respectfully requests that the Court

13  compel: (i) Defendant TrueCar to produce Slack data responsive to Plaintiff's

14  Requests; and (ii) the Officer Defendants and defendant Claus to produce text

15  messages stored on their personal devices responsive to the Requests.

16  Dated: April 26, 2019         Respectfully submitted,

17                  **KAPLAN FOX & KILSHEIMER LLP**

18                  By: */s/    Justin B. Farar*

19                       Justin B. Farar

20                  Justin B. Farar (SBN 211556)
                       12400 Wilshire Boulevard, Suite 820

21                  Los Angeles, CA 90025
                       Telephone: 310.575.8604

22                  Facsimile: 310.444.1913
                       Email: jfarar@kaplanfox.com

23                  -and-

24                  Laurence D. King (SBN 206423)
                       Mario M. Choi (SBN 243409)

25                  350 Sansome Street, Suite 400
                       San Francisco, CA 94104

26                  Telephone: 415.772.4700
                       Facsimile: 415.772.4707

27                  Email: lking@kaplanfox.com

28

mchoi@kaplanfox.com

Robert N. Kaplan (admitted *pro hac vice*)
Jeffrey P. Campisi (admitted *pro hac vice*)
Jason A. Uris (admitted *pro hac vice*)
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714
Email: rkaplan@kaplanfox.com
　　　jcampisi@kaplanfox.com
　　　juris@kaplanfox.com

*Liaison Counsel for Lead Plaintiff and the Class*

**SAXENA WHITE P.A.**
Maya Saxena
Joseph E. White, III
Lester R. Hooker (241590)
Dianne M. Anderson (286199)
150 E. Palmetto Park Road, Suite 600
Boca Raton, FL 33432
Telephone:　(561) 394-3399
Facsimile:　(561) 394-3382
E-mail:　　msaxena@saxenawhite.com
　　　　　jwhite@saxenawhite.com
　　　　　lhooker@saxenawhite.com
　　　　　danderson@saxenawhite.com

-and-

Steven B. Singer (admitted *pro hac vice*)
Kyla Grant (admitted *pro hac vice*)
Sara DiLeo (admitted *pro hac vice*)
10 Bank Street, 8th Floor
White Plains, NY 10606
Telephone:　(914) 437-8551
Facsimile:　(888) 631-3611
E-mail:　　ssinger@saxenawhite.com
　　　　　kgrant@saxenawhite.com
　　　　　sdileo@saxenawhite.com

*Lead Counsel for Lead Plaintiff Oklahoma Police Pension and Retirement Fund and the Class*

**PROOF OF SERVICE VIA ELECTRONIC POSTING PURSUANT TO CENTRAL DISTRICT OF CALIFORNIA LOCAL RULES AND ECF GENERAL ORDER NO. 10-07**

I HEREBY CERTIFY that, on April 26, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all registered users. I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 26, 2019.

*/s/ Justin B. Farar*
Justin B. Farar