**SAXENA WHITE P.A.**
Maya Saxena
Joseph E. White, III
Lester R. Hooker (241590)
Dianne M. Pitre (286199)
150 E. Palmetto Park Road, Suite 600
Boca Raton, FL 33432
Telephone:  (561) 394-3399
Facsimile: (561) 394-3382
E-mail: msaxena@saxenawhite.com
            jwhite@saxenawhite.com
            lhooker@saxenawhite.com
            dpitre@saxenawhite.com

[Additional Counsel on Signature Page]

***Lead Counsel for Lead Plaintiff and the Class***

**WILSON SONSINI GOODRICH & ROSATI, PC**
Boris Feldman (128838)
Jerome F. Birn, Jr. (128561)
Catherine E. Moreno (264517)
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile:  (650) 565-5100
Email: boris.feldman@wsgr.com
            jbirn@wsgr.com
            cmoreno@wsgr.com

Nicholas R. Miller (274243)
1700 K Street NW
Washington, D.C. 20006
Telephone: (202) 973-880
Facsimile: (202) 973-8899
Email: Nmiller@wsgr.com

***Attorneys for Defendants TrueCar, Inc. and the Individual Defendants***

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEON D. MILBECK, on behalf of himself and all others similarly situated<br><br>Plaintiff,<br><br>vs.<br><br>TRUECAR, INC., et al.,<br><br>Defendants. | No. 2:18-cv-02612-SVW-AGR<br><br><u>CLASS ACTION</u><br><br>**STIPULATION AND AGREEMENT OF SETTLEMENT**<br><br>Honorable Stephen V. Wilson |

This Stipulation and Agreement of Settlement dated as of August 2, 2019 (the "Stipulation") is made pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.  Subject to the approval of the United States District Court for the Central District of California (the "Court"), this Stipulation is entered into by and among the following parties to the above-captioned action (the "Action") by and through their counsel of record in the Action:  (a) Oklahoma Police Pension and Retirement Fund, as court-appointed lead plaintiff ("Class Representative," "Lead Plaintiff" or "Plaintiff"), on behalf of itself and the other members of the Settlement Class (defined below); and (b) (i) defendant TrueCar, Inc. ("TrueCar" or the "Company"); (ii) defendants Victor "Chip" Perry ("Perry"), Michael Guthrie ("Guthrie"), and John Pierantoni ("Pierantoni") (with Perry and Guthrie, the "Officer Defendants"); and (iii) defendants Abhishek Agrawal, Robert Buce, Christopher Claus, Steven Dietz, John Krafcik, Erin Lantz, Wesley Nichols, and Ion Yadigaroglu (the "Director Defendants" and, together with the Officer Defendants, the "Individual Defendants") (collectively the "Defendants" and, together with Lead Plaintiff, the "Parties").[1]  This Stipulation is intended to fully, finally, and forever compromise, settle, release, resolve, and dismiss with prejudice all claims asserted in the Action against Defendant Releasee as set forth below.

# I.    THE ACTION

## A.    Overview of Plaintiff's Claims

The original securities class action complaint in the Action was filed in this District on March 30, 2018, alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.  On June 27, 2018, the Court appointed Oklahoma Police Pension and Retirement Fund as Lead Plaintiff pursuant to the requirements of the

---

[1] All terms with initial capitalization not otherwise defined herein shall have the meanings ascribed to them in ¶1 herein.  The singular forms of nouns and pronouns include the plural and vice versa.

1 Private Securities Litigation Reform Act of 1995 and approved Lead Plaintiff's
2 selection of Lead Counsel and Liaison Counsel.  ECF No. 39.  On August 24, 2018,
3 Plaintiff filed its Amended Class Action Complaint for Violations of the Federal
4 Securities Laws and Jury Trial Demand ("Amended Complaint"), adding claims
5 based on TrueCar's April 26, 2017 secondary offering (the "Offering")[2]  for
6 violations of Section 11, Section 12(a)(2) and Section 15 of the Securities Act of
7 1933 (the "Securities Act").  ECF No. 47.

8    The Amended Complaint alleges, among other things, that throughout the
9 Settlement Class Period (as defined below), Defendants misrepresented TrueCar's
10 business throughout the Settlement Class Period and failed to disclose to investors
11 that TrueCar's most important and largest "affinity" partner, United Services
12 Automobile Association ("USAA"), had informed the Company that it planned to
13 significantly redesign its car-buying website by requiring members to answer
14 intrusive personal finance questions before gaining access to the TrueCar website.
15 This change would discourage members from proceeding to the TrueCar website,
16 significantly decreasing web traffic and ultimately negatively impacting TrueCar's
17 financial results.  The Amended Complaint further alleges that TrueCar's stock
18 price was artificially inflated as a result of Defendants' false and misleading
19 statements, and that TrueCar's stock price declined when the truth regarding
20 Defendants' alleged misrepresentations was revealed.

21    **B.**  **The Pleading Stage**

22    On October 2, 2018, the Court held a Status Conference during which the
23 Court, after hearing the facts of the case from all parties, set a trial date of August 6,
24 2019.  ECF No. 68.  On November 5, 2018, Defendants filed their motion to

---

25 [2] Lead Plaintiff added the underwriters of the Offering as defendants, including
26 Goldman Sachs & Co. LLC, J.P. Morgan Securities LLC, RBC Capital Markets, LLC, JMP Securities LLC, B. Riley FBR, Inc., Craig-Hallum Capital Group LLC, Stephens Inc. and Loop Capital Markets LLC (the "Underwriters").  Lead Plaintiff
27 and the Underwriters subsequently entered into a confidential agreement whereby Lead Plaintiff agreed to voluntarily dismiss the Underwriters in return for the
28 Underwriters' agreement to participate in discovery.  ECF No. 82.

1   dismiss the Amended Complaint.  ECF No. 88.  Lead Plaintiff filed its opposition

2   on December 20, 2018, and on January 31, 2019, Defendants filed their reply.  ECF

3   Nos. 90, 91.

4        On February 5, 2019, the Parties held their first mediation session before the

5   Honorable Gary A. Feess, which concluded with the Parties at an impasse.  On the

6   same day, the Court entered an Order denying Defendants' motion to dismiss in its

7   entirety, finding that Defendants made materially false and misleading statements

8   regarding the risk that USAA's web redesign would negatively impact traffic on

9   TrueCar's site.  ECF No. 93.  Judge Wilson also held that Plaintiff alleged a strong

10  inference of scienter by alleging that Defendants knew, and did not alert the

11  investing public, about USAA's web redesign and its impact as of January 2017. *Id*.

12  Defendants filed their Answer to the Amended Complaint on February 19, 2019.

13  ECF No. 94.

14       **C.    Discovery Proceedings**

15       Discovery commenced immediately after the Court's denial of Defendants'

16  motion to dismiss.  Lead Plaintiff sought discovery from TrueCar, each of the

17  Individual Defendants, as well as USAA and several non-parties.  Defendants

18  sought discovery from Lead Plaintiff, Lead Plaintiff's investment manager and

19  Lead Plaintiff's expert on market efficiency.

20       Specifically, Lead Plaintiff served its First Set of Requests for Production of

21  Documents to All Defendants on February 8, 2019.  Defendants served their First

22  Set of Requests for Production of Documents to Lead Plaintiff on February 25,

23  2019. Defendants served their responses and objections to Lead Plaintiff's requests

24  on March 11, 2019.  Lead Plaintiff served its responses and objections to

25  Defendants' requests on March 27, 2019.  After the Parties agreed on search terms,

26  Defendants produced, and Lead Plaintiff reviewed, approximately 3.5 million pages

27  of documents in eight separate productions over the course of approximately two

28  months, with Defendants providing Lead Plaintiff with their first production on

4

March 21, 2019.   On February 14, 2019, Lead Plaintiff served USAA with a Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises.   USAA served its responses and objections to Lead Plaintiff's Subpoena on February 28, 2019.   Ultimately, USAA produced, and Lead Plaintiff reviewed, approximately 78,000 pages of documents. Lead Plaintiff also served its First Set of Requests for Production of Documents to All Underwriters on February 13, 2019 and the Underwriters jointly served their responses and objections to Lead Plaintiff's requests on March 15, 2019.   Conducting this discovery required a monumental effort given the expedited schedule.

During the course of discovery, the Parties engaged in motion practice on a variety of issues.  The Parties exchanged numerous letters between March 10, 2019 and May 14, 2019; and engaged in multiple meet and confer conferences in an attempt to come to an agreement on, among other things, whether Defendants should search for and produce materials responsive to Lead Plaintiff's requests that were contained in a messaging application TrueCar utilized during the Class Period to communicate internally and with USAA, known as Slack.  The Parties were not able to come to an agreement on this and other issues.  The Parties filed their Joint Report submitting, among other things, Lead Plaintiff's motion to compel Defendants' production of responsive Slack data.   ECF No. 110.   A lengthy telephonic conference was held before Magistrate Judge Rosenberg on April 17, 2019.  ECF No. 113.

On April 26, 2019, Lead Plaintiff filed a motion to compel Defendants' production of Slack data responsive to the requests.  ECF No. 125.  On the same day, Defendants filed an opposition to Lead Plaintiff's motion not disputing the potential importance or responsiveness to Lead Plaintiff's requests, but arguing that it would be too burdensome to search for and produce such data given the expedited case schedule. ECF No. 128. On May 2, 2019, Magistrate Judge Rosenberg issued an Order acknowledging that although production of the Slack data was "significant

to resolution of the case," the expedited case schedule prevented Defendants from producing such information and denied Lead Plaintiff's motion to compel, without prejudice, in the event Plaintiff sought and the Court granted a continuance so that the Slack data could be produced and reviewed "in time to be used in depositions and expert discovery."  ECF No. 137.

The Parties also filed a joint stipulation to continue pre-trial deadlines and extend the trial date from August 6, 2019, to January 27, 2020.  ECF No. 144.  The Court granted the motion, but only agreed to extend the trial date to November 5, 2019.  *See* ECF No. 155.  On May 16, 2019, the Parties filed another joint stipulation extending certain deadlines, including the fact discovery cutoff to September 6, 2019. ECF No. 163.  The Court granted this stipulation on June 20, 2019.  ECF No. 168.

### D.  Class Certification and Settlement Negotiations

While discovery was underway, Lead Plaintiff filed a Motion for Class Certification on March 8, 2019.  ECF No. 98.  On April 3, 2019, Defendants took the deposition of the Executive Director of Lead Plaintiff in Chicago, Illinois.  On April 4, 2019, Defendants took the deposition of Lead Plaintiff's investment manager, and on April 8, 2019, Defendants took the deposition of Lead Plaintiff's expert on market efficiency, both of which also took place in Chicago, Illinois.  Defendants filed their Opposition to the Motion for Class Certification on April 17, 2019.  ECF No. 118.  On May 6, 2019, Lead Plaintiff filed its reply.  ECF No. 150.  On May 9, 2019, the Court granted the Motion for Class Certification, and on May 24, 2019, the Court issued a more detailed Order setting forth the Court's rationale for granting the motion.  ECF Nos. 155, 167.

On June 5, 2019, the Parties and Defendants' directors' and officers' liability insurance carriers (the "D&O Insurers") participated in a mediation session with mediator Jed Melnick. Prior to the mediation, each side submitted comprehensive mediation statements setting forth their respective positions on various legal and

factual issues, which included detailed information obtained through the extensive discovery process. During the mediation, the Parties provided their respective views on liability and damages. At the conclusion of the mediation, the Parties still had not reached an agreement on a resolution of the Action. Thereafter, the Parties continued to negotiate with each other and with Mr. Melnick, culminating in a mediator's proposal, which the Parties accepted on July 2, 2019. The Parties provided a Notice of Settlement on July 3, 2019. ECF No. 169.

## II. CLAIMS OF LEAD PLAINTIFF AND BENEFITS OF SETTLEMENT

Based on Lead Plaintiff's evaluation, Lead Plaintiff and its counsel have determined that the terms set forth in this Stipulation are fair, reasonable, adequate, and in the best interests of the Settlement Class. Based upon its investigation and prosecution of the case, Lead Plaintiff believes that the claims asserted in the Action have merit and that the evidence developed to date supports those claims. The Stipulation shall not be construed as or received in evidence as an admission, concession or presumption against Lead Plaintiff or any of the Settlement Class Members that any of their claims are without merit, that any defenses asserted by Defendants have merit, or that the damages recoverable in the Action would not have exceeded the Settlement Fund (as defined herein). However, Lead Plaintiff recognizes and acknowledges the potential expense and length of continued proceedings necessary to prosecute the Action against Defendants through trial and through appeals.

Lead Plaintiff has also taken into account the uncertain outcome and risk of any litigation, especially in complex actions such as this Action, as well as the difficulties and delays of such litigation. Lead Plaintiff is also mindful of the inherent difficulties of proof associated with, and possible defenses to, the securities law violations asserted in the Action. Lead Plaintiff believes that the terms set forth in this Stipulation confer substantial benefits upon the Settlement Class.

## III.   DEFENDANTS' DENIALS OF WRONGDOING AND LIABILITY

Defendants deny each and all of the claims and contentions alleged by Lead Plaintiff in the Action.  Defendants deny all charges of wrongdoing or liability or any violation of law arising out of any of the conduct, statements, acts or omissions alleged, or that could have been alleged, in the Action; have denied, and continue to deny, the allegations that Lead Plaintiff or any Settlement Class Member has suffered damages or was harmed by any of the conduct alleged in the Action; continue to believe the claims asserted against them in the Action are without merit; and have agreed to enter into the settlement set forth in this Stipulation solely to avoid the expense, distraction, time and uncertainty associated with the Action.

Defendants have concluded that further conduct of the Action would be protracted and expensive and that it is desirable that the Action be fully and finally settled in the manner and upon the terms and conditions set forth in this Stipulation. Defendants also have taken into account the risks inherent in any litigation, especially in complex cases such as this Action.  Defendants have therefore determined that it is desirable and beneficial to them that the Action be settled in the manner and upon the terms and conditions set forth in this Stipulation.

## IV.   SETTLEMENT TERMS

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and among Lead Plaintiff (individually and on behalf of all other members of the Settlement Class) and Defendants, by and through their respective undersigned attorneys and subject to the approval of the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, that, in consideration of the benefits flowing to the Parties from the Settlement, all Released Plaintiffs' Claims as against the Defendant Releasees and all Released Defendants' Claims as against the Plaintiff Releasees shall be settled and released, and the Action shall be dismissed with prejudice, upon and subject to the terms and conditions set forth below.

## 1. Definitions

As used in this Stipulation, the following terms have the meanings specified below:

1.1   "Action" means the securities class action styled *Leon D. Milbeck v. TrueCar, Inc. et al.*, Case No. 2:18-cv-2612-SVW-AGR (C.D. Cal).

1.2   "Alternate Judgment" means a form of final judgment in a form other than the form of Judgment provided for in this Stipulation that may be approved of in writing by all the Parties acting by and through their respective counsel of record in the Action and entered by the Court.

1.3   "Authorized Claimant" means a Settlement Class Member who submits a Proof of Claim Form to the Claims Administrator that is approved by the Court for payment from the Net Settlement Fund.

1.4   "Claim" means a Proof of Claim Form submitted to the Claims Administrator.

1.5   "Claim Form" or "Proof of Claim Form" means in the form attached hereto as Exhibit A-2, or in such other form as may be approved in writing by all of the Parties acting by and through their respective counsel of record in the Action and approved by the Court, that a Claimant or Settlement Class Member must complete and submit should that Claimant or Settlement Class Member seek to share in a distribution of the Net Settlement Fund.

1.6   "Claimant" means a person or entity who or which submits a Claim Form to the Claims Administrator seeking to be eligible to share in the proceeds of the Settlement Fund.

1.7   "Claims Administrator" means the firm retained by Lead Plaintiff and Lead Counsel, subject to approval of the Court, to provide all notices approved by the Court to potential Settlement Class Members and to administer the Settlement.

1.8    "Class Distribution Order" means an order entered by the Court authorizing and directing that the Net Settlement Fund be distributed, in whole or in part, to Authorized Claimants.

1.9    "Court" means the United States District Court for the Central District of California.

1.10    "Defendants" means TrueCar and the Individual Defendants.

1.11    "Defendants' Counsel" means Wilson Sonsini Goodrich & Rosati, PC.

1.12    "Defendant Releasees" means each and all Defendants, the Underwriters, Defendants' Counsel, the D&O Insurers, and their respective Related Persons.

1.13    "Derivative Actions" means *Drulias v. Guthrie*, No. 2:19-cv-01636 (C.D. Cal.); *In re TrueCar, Inc. Shareholder Derivative Litigation*, No. 1:19-cv-00617 (D. Del); and *IN RE: TrueCar, Inc., Shareholder Derivative Litigation*, MDL No. 2900.

1.14    "Effective Date" means the first date by which all of the conditions specified in paragraph 8.1 below have been met and have occurred or have been waived.

1.15    "Escrow Account" means an account maintained at IberiaBank, wherein the Settlement Amount shall be deposited and held in escrow under the control of Lead Counsel.

1.16    "Escrow Agent" means IberiaBank.

1.17    "Escrow Agreement" means the agreement between Lead Counsel and the Escrow Agent setting forth the terms under which the Escrow Agent shall maintain the Escrow Account.

1.18    "Excluded Claims" means (i) any claims asserted in the Derivative Actions or any other derivative or ERISA action based on similar allegations as those set forth in the Amended Complaint; and (ii) any claims of any person or entity who or which submits a request for exclusion that is accepted by the Court.

1.19  "Final," with respect to the Judgment, or any other court order, means: (i) if no appeal is filed, the expiration date of the time provided for filing or noticing any appeal under the Federal Rules of Appellate Procedure, i.e., thirty (30) days after entry of the judgment or order; or (ii) if there is an appeal from the judgment or order, (a) the date of final dismissal of all such appeals, or the final dismissal of any proceeding on certiorari or otherwise, or (b) the date the judgment or order is finally affirmed on an appeal, the expiration of the time to file a petition for a writ of certiorari or other form of review, or the denial of a writ of certiorari or other form of review, and, if certiorari or other form of review is granted, the date of final affirmance following review pursuant to that grant.   However, any appeal or proceeding seeking subsequent judicial review pertaining solely to an order issued with respect to (i) attorneys' fees, costs or expenses, (ii) the plan of allocation of Settlement proceeds (as submitted or subsequently modified); or (iii) the procedures for determining Authorized Claimants' recognized claims, or distribution of the Net Settlement Fund to Authorized Claimants, shall not in any way delay or affect the time set forth above for the Judgment to become Final, or otherwise preclude a judgment from becoming Final.

1.20  "Immediate Family" means children, stepchildren, parents, stepparents, spouses, siblings, mothers-in-law, fathers-in-law, sons-in-law, daughters-in-law, brothers-in-law, and sisters-in-law.   As used in this paragraph, "spouse" shall mean a husband, a wife, or a partner in a state-recognized domestic relationship or civil union.

1.21  "Individual Defendants" means Victor "Chip" Perry, Michael Guthrie, John Pierantoni, Abhishek Agrawal, Robert Buce, Christopher Claus, Steven Dietz, John Krafcik, Erin Lantz, Wesley Nichols, and Ion Yadigaroglu.

1.22  "Judgment" means the judgment to be rendered by the Court in the form of Exhibit B attached hereto, or the Alternate Judgment.

1.23  "Lead Counsel" means Saxena White P.A.

1.24 "Lead Plaintiff" means Oklahoma Police Pension and Retirement Fund.

1.25 "Liaison Counsel" means Kaplan Fox & Kilsheimer LLP.

1.26 "Litigation Expenses" means costs and expenses incurred in connection with commencing, prosecuting and settling the Action (which may include the reimbursement of time, costs and expenses of Lead Plaintiff directly related to its representation of the Settlement Class), for which Lead Counsel intend to apply to the Court for reimbursement from the Settlement Fund.

1.27 "Net Settlement Fund" means the Settlement Fund less: (i) any Taxes and Tax Expenses; (ii) any Notice and Administration Costs; (iii) any Litigation Expenses awarded by the Court; (iv) any attorneys' fees awarded by the Court; and (v) other Court-approved deductions.

1.28 "Notice" means the Notice of (i) Proposed Settlement and Plan of Allocation; (ii) Settlement Fairness Hearing; and (iii) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, in the form attached hereto as Exhibit A-1, or in such other form as may be approved in writing by all of the Parties acting by and through their respective counsel of record in the Action and approved by the Court, which is to be mailed to Settlement Class Members.

1.29 "Notice and Administration Costs" means the reasonable costs, fees and expenses that are actually incurred by the Claims Administrator and/or Lead Counsel in connection with: (i) providing notices to the Settlement Class; and (ii) administering the Settlement, including but not limited to the Claims process, as well as the costs, fees and expenses incurred in connection with the Escrow Account.

1.30 "Officer" means any officer as that term is defined in Securities and Exchange Act Rule 16a-1(f).

1.31 "Parties" means Defendants and Lead Plaintiff, on behalf of themselves and the Settlement Class.

1      1.32   "Plaintiffs' Counsel" means Lead Counsel and all other legal counsel
2   who, at the direction and under the supervision of Lead Counsel, performed
3   services on behalf of the Settlement Class in the Action.

4      1.33   "Plaintiff Releasees" means Lead Plaintiff, all other plaintiffs in the
5   Action, Plaintiffs' Counsel, and all other Settlement Class Members, as well as
6   each of their respective current and former Officers, directors, agents, parents,
7   affiliates, subsidiaries, successors, predecessors, assigns, assignees, employees, and
8   attorneys, in their capacities as such.

9      1.34   "Plan of Allocation" means the proposed plan or formula for
10   allocation of the Net Settlement Fund to Authorized Claimants as set forth in the
11   Notice.   Any Plan of Allocation is not part of the Stipulation, and Defendant
12   Releasees shall have no responsibility for the Plan of Allocation or its
13   implementation and no liability with respect thereto.   Any order or proceeding
14   relating to the Plan of Allocation shall not operate to terminate or cancel this
15   Stipulation or affect the finality of the Judgment or any other orders entered by the
16   Court pursuant to this Stipulation.

17      1.35   "Preliminary Approval Order" means the order to be entered by the
18   Court preliminarily approving the Settlement and directing that notice of the
19   Settlement be provided to the Settlement Class, in the form attached hereto as
20   Exhibit A, or in such other form as may be approved in writing by all of the Parties
21   acting by and through their respective counsel of record in the Action and approved
22   by the Court.

23      1.36   "PSLRA" means the Private Securities Litigation Reform Act of 1995,
24   15 U.S.C. § 78u-4, as amended.

25
26
27
28

1.37  "Related Persons" means (i) with respect to Defendants, the Underwriters, Defendants' Counsel, and the D&O Insurers, each of their respective current and former, Officers, directors, agents, parents, affiliates, subsidiaries, reinsurers, successors, predecessors, assigns, assignees, employees, and attorneys, in their capacities as such; and (ii)  with respect to the Individual Defendants, their respective spouses, Immediate Family members, heirs, successors, executors, estates, administrators, attorneys, agents, accountants, insurers or reinsurers, personal representatives, trusts, community property, and any other entity in which any of them has a controlling interest, and as to such entities, each and all of their predecessors, successors, past, present or future parents, subsidiaries, affiliates, and each of their respective past or present officers, directors, shareholders, agents, partners, principals, members, employees, attorneys, advisors, trustees, auditors and accountants, insurers and reinsurers.

1.38  "Released Claims" means all Released Defendants' Claims and all Released Plaintiffs' Claims.

1.39  "Released Defendants' Claims" means all claims, demands, losses, rights, liability, or causes of action, in law or in equity, accrued or unaccrued, fixed or contingent, direct, individual or representative, of every nature and description whatsoever, whether known or unknown, or based on federal, state, local, statutory or common law or any other law, rule or regulation, (including the law of any jurisdiction outside the United States), that were or could have been asserted in the Action or could in the future be asserted in any forum, whether foreign or domestic, against Plaintiff Releasees by Defendants or any member of Defendant Releasees, or their successors, assigns, executors, administrators, representatives, attorneys and agents in their capacity as such, which arise out of, relate to, or are based upon, the institution, prosecution, or settlement of the claims asserted in the Action against the Defendants.  Released Defendants' Claims do not include any claims relating to the enforcement of the Settlement and any claims against any person or entity who

or which submits a request for exclusion from the Settlement Class that is accepted by the Court.

1.40    "Released Plaintiffs' Claims" means all claims, demands, losses, rights, liability, or causes of action, in law or in equity, accrued or unaccrued, fixed or contingent, direct, individual or representative, of every nature and description whatsoever, whether known or unknown, or based on federal, state, local, statutory or common law or any other law, rule or regulation, (including the law of any jurisdiction outside the United States), that were or could have been asserted in the Action or could in the future be asserted in any forum, whether foreign or domestic, against Defendant Releasees by Class Representative or any member of the Settlement Class, or their successors, assigns, executors, administrators, representatives, attorneys and agents in their capacity as such, which arise out of, are based upon, or relate in any way to the factual predicate of the Action, including (i) any of the allegations, facts, transactions, events, matters, occurrences, acts, disclosures, oral or written statements, representations, omissions, failures to act, filings, publications, disseminations, press releases, or presentations involved, set forth, alleged or referred to in the Action; and (ii) all claims that arise out of, are based upon, or relate in any way to the purchase, acquisition, holding, sale, or disposition of any TrueCar securities during the Settlement Class Period. "Released Plaintiffs' Claims" shall not include any claims to enforce this Settlement, any of the claims asserted in the Derivative Actions, or Excluded Claims.

1.41    "Releasee(s)" means each and any of the Defendant Releasees and each and any of the Plaintiff Releasees.

1.42    "Releases" means the releases set forth in ¶¶5.2-5.3 of this Stipulation.

1.43    "Settlement" means the settlement of the Action between Lead Plaintiff, on behalf of itself and the Settlement Class, and each of the Defendants on the terms and conditions set forth in this Stipulation.

1.44 "Settlement Amount" means twenty-eight million two hundred fifty thousand dollars ($28,250,000.00) in cash.

1.45 "Settlement Class" or "Class" means the class certified in the Court's orders dated May 9, 2019 and May 24, 2019. ECF Nos. 155, 167. Specifically, the Settlement Class includes all persons or entities who purchased or otherwise acquired (1) the publicly traded TrueCar common stock of TrueCar, Inc. from February 16, 2017 through November 6, 2017, or (2) the common stock of TrueCar pursuant and/or traceable to the secondary offering of TrueCar common stock conducted on or about April 26, 2017 and were damaged thereby. Excluded from the Settlement Class are Defendants, the officers and directors of TrueCar at all relevant times, and all such excluded persons' Immediate Family members, legal representatives, heirs, agents, affiliates, predecessors, successors and assigns, and any entity in which any excluded person has or had a controlling interest. Also excluded from the Settlement Class are those persons who file valid and timely requests for exclusion in accordance with the Preliminary Approval Order.

1.46 "Settlement Class Period" or "Class Period" means the time period between February 16, 2017 and November 6, 2017, inclusive.

1.47 "Settlement Class Member" means each person or entity who or which is a member of the Settlement Class.

1.48 "Settlement Fund" means the Settlement Amount plus any and all interest earned thereon.

1.49 "Settlement Hearing" or "Final Approval Hearing" means the hearing set by the Court under Rule 23(e)(2) of the Federal Rules of Civil Procedure to consider final approval of the Settlement.

1.50 "Stipulation" means this Stipulation of Settlement, including the recitals and Exhibits hereto, each of which is incorporated by reference as though set forth in the Stipulation itself.

1.51 "Summary Notice" means the Summary Notice of (i) Proposed Settlement and Plan of Allocation; (ii) Settlement Fairness Hearing; and (iii) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, in the form attached hereto as Exhibit A-3, to be published as set forth in the Preliminary Approval Order, or in such other form as may be approved in writing by all of the Parties acting by and through their respective counsel of record in the Action and approved by the Court.

1.52 "Taxes" means: (i) all federal, state and/or local taxes of any kind (including any interest or penalties thereon) on any income earned by the Settlement Fund; (ii) the expenses and costs incurred by Lead Counsel in connection with determining the amount of, and paying, any taxes owed by the Settlement Fund (including, without limitation, expenses of tax attorneys and accountants); and (iii) all taxes imposed on payments by the Settlement Fund, including withholding taxes.

1.53 "Tax Expenses" means any expenses and costs incurred in connection with the calculation and payment of Taxes or the preparation of tax returns and related documents including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in ¶¶2.6-2.7.

1.54 "TrueCar" or "the Company" means TrueCar, Inc.

1.55 "Underwriters" means Goldman Sachs & Co. LLC, J.P. Morgan Securities LLC, RBC Capital Markets, LLC, JMP Securities LLC, B. Riley FBR, Inc., Craig-Hallum Capital Group LLC, Stephens Inc. and Loop Capital Markets LLC.

1.56 "Unknown Claims" means any Released Plaintiffs' Claims that Lead Plaintiff or any other Settlement Class Member does not know or suspect to exist in his, her, or its favor at the time of the release of such claims, and any Released Defendants' Claims that any Defendant or any other Defendant Releasee does not

know or suspect to exist in his, her, or its favor at the time of the release of such claims, which, if known by him, her, or it might have affected his, her, or its decision(s) with respect to this Settlement. With respect to any and all Released Claims, the Parties stipulate and agree that, upon the Effective Date of the Settlement, Lead Plaintiff and Defendants shall expressly waive, and each of the other Plaintiff Releasees and Defendant Releasees shall be deemed to have waived, and by operation of the Judgment, shall have expressly waived, any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law or foreign law, which is similar, comparable, or equivalent to California Civil Code §1542, which provides:

**A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.**

Lead Plaintiff and Defendants acknowledge, and each of the other Settlement Class Members and each of the other Plaintiff Releasees and Defendant Releasees shall be deemed by operation of law to have acknowledged, that the foregoing waiver was separately bargained for and a key element of the Settlement.

**2.    The Settlement**

**a.    The Settlement Fund**

2.1    Subject to the terms of this Stipulation, Defendants shall cause the D&O Insurers to pay the Settlement Amount into the Escrow Account designated by the Escrow Agent on or before thirty (30) calendar days after entry of the Preliminary Approval Order, provided that Lead Counsel shall have provided Defendants' Counsel with an appropriate W-9 form and other necessary payee information for the Escrow Account not later than fifteen (15) calendar days after this Stipulation is fully executed.  None of the Defendant Releasees, other than as

specified in this Paragraph 2.1, shall have any obligation to the Plaintiff Releasees under this Stipulation for payment of any amounts.

2.2    The payments described in ¶2.1 are the only payments to be made by or on behalf of any and all of the Defendant Releasees in connection with this Settlement.  All fees, costs, and expenses incurred by or on behalf of Lead Plaintiff and members of the Settlement Class associated with this Settlement, including, but not limited to, (a) any Taxes or Tax Expenses; (b) any Notice and Administration Costs; (c) any Litigation Expenses awarded by the Court; and (d) any attorneys' fees awarded by the Court, shall be paid from the Settlement Fund, and in no event shall any Defendant Releasee bear any responsibility or liability for any such fees, costs, or expenses.

### b.    Use of Settlement Fund

2.3    Subject to the terms and conditions of this Stipulation and the Settlement, the Settlement Fund shall be used to pay: (a) any Taxes or Tax Expenses; (b) any Notice and Administration Costs; (c) any Litigation Expenses awarded by the Court; and (d) any attorneys' fees awarded by the Court.  The balance remaining in the Settlement Fund, that is, the Net Settlement Fund, shall be distributed to Authorized Claimants as provided in ¶¶4.1-4.14 below, or as otherwise ordered by the Court.

2.4    Except as provided herein or pursuant to orders of the Court, the Net Settlement Fund shall remain in the Escrow Account prior to the Effective Date. All funds held by the Escrow Agent shall be deemed to be in the custody of the Court, and shall remain subject to the jurisdiction of the Court until such time as the funds shall be distributed or returned pursuant to the terms of this Stipulation or further order(s) of the Court.  The Escrow Agent shall invest any funds in the Escrow Account exclusively in United States Treasury Bills (or a mutual fund invested solely in such instruments) and shall collect and reinvest all interest accrued thereon, except that any residual cash balances up to the amount that is

insured by the FDIC may be deposited in any account that is fully insured by the FDIC.  In the event that the yield on United States Treasury Bills is negative, in lieu of purchasing such Treasury Bills, all or any portion of the funds held by the Escrow Agent may be deposited in any account that is fully insured by the FDIC or backed by the full faith and credit of the United States.  Additionally, if short-term placement of the funds is necessary, all or any portion of the funds held by the Escrow Agent may be deposited in any account that is fully insured by the FDIC or backed by the full faith and credit of the United States.  All risks related to the investment of the Settlement Fund shall be borne by the Escrow Agent, and the Defendant Releasees shall have no responsibility for, interest in, or liability whatsoever with respect to any investment decisions or actions taken, or any transactions executed by, the Escrow Agent.

2.5   The Escrow Agent shall not disburse the Settlement Fund except as provided in the Stipulation or by an order of the Court.

2.6   The Parties agree that the Settlement Fund is intended to be a Qualified Settlement Fund within the meaning of Treasury Regulation § 1.468B-1 and that Lead Counsel, as administrators of the Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall be solely responsible for filing or causing to be filed all informational and other tax returns as may be necessary or appropriate (including, without limitation, the returns described in Treasury Regulation § 1.468B-2(k)) for the Settlement Fund.  Lead Counsel shall also be responsible for causing payment to be made from the Settlement Fund of any Taxes owed with respect to the Settlement Fund.  The Defendant Releasees shall not have any liability or responsibility for any such Taxes.  Upon written request, Defendants will provide to Lead Counsel the statement described in Treasury Regulation § 1.468B-3(e).  Lead Counsel, as administrators of the Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall timely make such elections as are necessary or advisable to carry out this paragraph, including, as necessary,

making a "relation back election," as described in Treasury Regulation § 1.468B-1(j), to cause the Qualified Settlement Fund to come into existence at the earliest allowable date, and shall take or cause to be taken all actions as may be necessary or appropriate in connection therewith.  Such elections shall be made in compliance with procedures and requirements contained in such regulations.  It shall be the responsibility of Lead Counsel to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to timely occur.

2.7    All Taxes and Tax Expenses shall be paid out of the Settlement Fund, and shall be timely paid by the Escrow Agent pursuant to the disbursement instructions to be set forth in the Escrow Agreement, and without further order of the Court.  Any tax returns prepared for the Settlement Fund (as well as the election set forth therein) shall be consistent with the previous paragraph and in all events shall reflect that all Taxes on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided herein.  The Defendant Releasees shall have no responsibility or liability for the acts or omissions of the Claims Administrator, the Escrow Agent, Lead Counsel, or their agents with respect to the payment of Taxes, as described herein, or the filing of any tax returns or other documents in connection with the Settlement Fund.

2.8    The Settlement is not a claims-made settlement.  Upon the occurrence of the Effective Date, no Defendant Releasee, or any person or entity who or which paid any portion of the Settlement Amount, shall have any right to the return of the Settlement Fund or any portion thereof for any reason whatsoever, including without limitation, the number of Claim Forms submitted, the collective amount of recognized claims of Authorized Claimants, the percentage of recovery of losses, or the amounts to be paid to Authorized Claimants from the Net Settlement Fund.  In no instance shall any Defendant Releasee be required to pay any amount other than as specified in Paragraph 2.1.

2.9     Notwithstanding the fact that the Effective Date of the Settlement has not yet occurred, Lead Counsel may pay from the Settlement Fund, without further approval from Defendants or further order of the Court, reasonable Notice and Administration Costs actually incurred and paid or payable.   Such costs and expenses shall include, without limitation, the actual costs of printing and mailing the Notice, publishing the Summary Notice, reimbursements to nominee owners for forwarding the Notice to their beneficial owners, the administrative expenses incurred and fees charged by the Claims Administrator in connection with providing notice, administering the Settlement (including processing the submitted Claims), and the fees, if any, of the Escrow Agent.  In the event that the Settlement is terminated pursuant to the terms of this Stipulation, all Notice and Administration Costs paid or incurred, including any related fees, shall not be returned or repaid to any of the Defendant Releasees, or any person or entity who or which paid any portion of the Settlement Amount.

**3.      Preliminary Approval Order**

3.1     As soon as practicable after execution of the Stipulation, Lead Plaintiff will promptly move for preliminary approval of the Settlement, which motion shall be unopposed by Defendants.  Lead Counsel shall submit the Stipulation together with its exhibits (the "Exhibits") to the Court. Concurrently with the motion for preliminary approval, Lead Plaintiff shall apply to the Court for, and Defendants shall agree to, entry of the Preliminary Approval Order, in the form attached hereto as Exhibit A, or in or in such other form as may be approved in writing by all the Parties acting by and through their respective counsel of record in the Action and entered by the Court, requesting, *inter alia*, the preliminary approval of the Settlement set forth in this Stipulation, approval for mailing the Notice in the form of Exhibit A-1 attached hereto, and for publication of the Summary Notice in the form of Exhibit A-3 attached hereto, or in such other forms as may be approved in

writing by all of the Parties acting by and through their respective counsel of record in the Action and approved by the Court.

3.2   In addition, Lead Plaintiff's motion shall request that the Court hold the Final Approval Hearing.  At or after the Final Approval Hearing, Lead Counsel will request that the Court approve the proposed Plan of Allocation, reimbursement of Lead Plaintiff's costs and expenses directly related to their representation of the Settlement Class, and any of Plaintiffs' Counsel's fees and expenses.

### 4.   Notice and Settlement Administration

4.1   As part of the Preliminary Approval Order, Lead Plaintiff shall seek appointment of a Claims Administrator.  The Claims Administrator shall administer the Settlement, including, but not limited to, the process of receiving, reviewing, and approving or denying Claims, under Lead Counsel's supervision and subject to the jurisdiction of the Court.   Other than TrueCar's obligation to provide shareholder information as provided in ¶4.2 below, none of the Defendant Releasees shall have any involvement in or any responsibility, authority, or liability whatsoever for the selection of the Claims Administrator, the Plan of Allocation, the administration of the Settlement, the Claims process, or disbursement of the Net Settlement Fund, and shall have no liability whatsoever to any person or entity, including, but not limited to, Lead Plaintiff, any other Settlement Class Members, or Lead Counsel, in connection with the foregoing.   Defendants' Counsel shall cooperate in the administration of the Settlement to the extent reasonably necessary to effectuate its terms.

4.2   In accordance with the terms of the Preliminary Approval Order to be entered by the Court, Lead Counsel shall cause the Claims Administrator to mail the Notice and Proof of Claim Form to those members of the Settlement Class as may be identified through reasonable effort.  Lead Counsel shall also cause the Claims Administrator to have the Summary Notice published in accordance with the terms of the Preliminary Approval Order to be entered by the Court.  For the

purposes of identifying and providing notice to the Settlement Class, within five (5) business days of the date of entry of the Preliminary Approval Order, TrueCar shall provide or cause to be provided to the Claims Administrator (at no cost to the Settlement Fund, Lead Counsel, or the Claims Administrator) records reasonably available to TrueCar or its transfer agent concerning the identity and last known address of Settlement Class Members, in electronic form or other form as is reasonably available to TrueCar or its transfer agent, which information the Claims Administrator shall treat and maintain as confidential.

4.3    The Claims Administrator shall receive Claims and determine first, whether the Claim is a valid Claim, in whole or part, and second, each Authorized Claimant's pro rata share of the Net Settlement Fund based upon each Authorized Claimant's recognized claim compared to the total recognized claims of all Authorized Claimants (as set forth in the Plan of Allocation set forth in the Notice attached hereto as Exhibit A-1, or in such other plan of allocation as the Court approves).

4.4    The Plan of Allocation proposed in the Notice is not a necessary term of the Settlement or of this Stipulation and it is not a condition of the Settlement or of this Stipulation that any particular plan of allocation be approved by the Court. Lead Plaintiff and Lead Counsel may not cancel or terminate the Settlement (or this Stipulation) based on this Court's or any appellate court's ruling with respect to the Plan of Allocation or any other plan of allocation in this Action.   Defendant Releasees shall not object in any way to the Plan of Allocation or any other plan of allocation in this Action.  No Defendant Releasees shall have any involvement with or liability, obligation, or responsibility whatsoever in connection with the Plan of Allocation or any other Court-approved plan of allocation.

4.5    Any Settlement Class Member who does not submit a valid Claim Form by the deadline set by the Court (unless and to the extent the deadline is extended by the Court) will not be entitled to receive any distribution from the Net

Settlement Fund, but will, nevertheless, upon the occurrence of the Effective Date, be bound by all of the terms of this Stipulation and Settlement (including the terms of the Judgment) and the releases provided for herein and therein, and will be permanently barred and enjoined from bringing any action, claim, or other proceeding of any kind against any Defendant Releasee with respect to the Released Plaintiffs' Claims.

4.6     Any Settlement Class Member who or which does not timely and validly request exclusion from the Settlement Class in the manner stated in the Preliminary Approval Order: (a) shall be deemed to have waived his, her or its right to be excluded from the Settlement Class; (b) shall be forever barred from requesting exclusion from the Settlement Class in this or any other proceeding; (c) shall be bound by the provisions of this Stipulation, the Settlement, and all proceedings, determinations, orders and judgments in the Action relating to the Settlement, including, but not limited to, the Judgment, and the Releases provided for therein whether favorable or unfavorable to the Settlement Class; and (d) shall be barred from commencing, maintaining or prosecuting any of the Released Claims against any of the Defendant Releasees.

4.7     Lead Counsel shall be responsible for supervising the administration of the Settlement and the disbursement of the Net Settlement Fund subject to Court approval.  No Defendant Releasee shall be permitted to review, contest or object to any Claim Form, or any decision of the Claims Administrator or Lead Counsel with respect to accepting or rejecting any Claim for payment by a Settlement Class Member.  Lead Counsel shall have the right, but not the obligation, to waive what they deem to be formal or technical defects in any Claim Forms submitted in the interests of achieving substantial justice.

4.8     The Net Settlement Fund shall be distributed to Authorized Claimants only after the later of the Effective Date; the Court having approved a plan of

allocation in an order that has become Final; and the Court issuing a Class Distribution Order that has become Final.

4.9    For purposes of determining the extent, if any, to which a Settlement Class Member shall be entitled to be treated as an Authorized Claimant, the following conditions shall apply:

(a)    Each Settlement Class Member shall be required to submit a Claim Form, in the form attached hereto as Exhibit A-2, or in such other form as may be approved in writing by all of the Parties acting by and through their respective counsel of record in the Action and approved by the Court, supported by such documents as are designated therein, including proof of the Claimant's loss, or such other documents or proof as the Claims Administrator or Lead Counsel, in their discretion, may deem acceptable;

(b)    All Claim Forms must be submitted by the date set by the Court in the Preliminary Approval Order and specified in the Notice, unless extended by the Court.  Any Settlement Class Member who fails to submit a Claim Form by such date shall be forever barred from receiving any distribution from the Net Settlement Fund or payment pursuant to this Stipulation (unless by Order of the Court such Settlement Class Member's Claim Form is accepted), but shall in all other respects be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Judgment and by the releases provided for herein and therein, and will be permanently barred and enjoined from bringing any action, claim, or other proceeding of any kind against any Defendant Releasee with respect to any Released Claim.  Provided that it is mailed by the claim-submission deadline, a Claim Form shall be deemed to be submitted when postmarked, if received with a postmark indicated on the envelope and if mailed by first-class mail and addressed in accordance with the instructions thereon.  In all other cases, the Claim Form shall be deemed to have been submitted on the date when actually received by the Claims Administrator;

(c)     Each Claim Form shall be submitted to and reviewed by the Claims Administrator who shall determine in accordance with this Stipulation and the Plan of Allocation the extent, if any, to which each Claim shall be allowed, subject to review by the Court pursuant to subparagraph (e) below as necessary;

(d)     Claim Forms that do not meet the submission requirements may be rejected.   Prior to rejecting a Claim in whole or in part, the Claims Administrator shall communicate with the Claimant in writing, to give the Claimant the chance to remedy any curable deficiencies in the Claim Form submitted.   The Claims Administrator shall notify, in a timely fashion and in writing, all Claimants whose Claim the Claims Administrator proposes to reject in whole or in part, setting forth the reasons therefor, and shall indicate in such notice that the Claimant whose Claim is to be rejected has the right to a review by the Court if the Claimant so desires and complies with the requirements of subparagraph (e) below; and

(e)     If any Claimant whose Claim has been rejected in whole or in part desires to contest such rejection, the Claimant must, within twenty (20) days after the date of mailing of the notice required in subparagraph (d) above, serve upon the Claims Administrator a notice and statement of reasons indicating the Claimant's grounds for contesting the rejection along with any supporting documentation, and requesting a review thereof by the Court.   If a dispute concerning a Claim cannot be otherwise resolved, Lead Counsel shall thereafter present the request for review to the Court, on reasonable notice to Defendants' Counsel.

4.10   Each Claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to the Claimant's Claim, and the Claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided, however, that such investigation and discovery shall be limited to that Claimant's status as a Settlement Class Member and the validity and amount of the Claimant's

Claim.   No discovery shall be allowed on the merits of this Action or of the Settlement in connection with the processing of Claim Forms.

4.11   Lead Counsel will apply to the Court, on reasonable notice to Defendants' Counsel, for a Class Distribution Order: (a) approving the Claims Administrator's administrative determinations concerning the acceptance and rejection of the Claims submitted; (b) approving payment of any administration fees and expenses associated with the administration of the Settlement from the Escrow Account; and (c) if the Effective Date has occurred, directing payment of the Net Settlement Fund to Authorized Claimants from the Escrow Account.

4.12   Payment pursuant to the Class Distribution Order shall be final and conclusive against all Settlement Class Members.   All Settlement Class Members who do not submit a Claim or whose Claims are not approved by the Court for payment shall be barred from participating in distributions from the Net Settlement Fund, but otherwise shall be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Judgment to be entered in this Action; and by the releases provided for herein and therein, and will be permanently barred and enjoined from bringing any action against any and all Defendant Releasees with respect to any and all of the Released Claims.

4.13   No Claimant or Settlement Class Member shall have any claim against Lead Plaintiff, Plaintiffs' Counsel, Defendants' Counsel, any Parties' damages experts, the Claims Administrator (or any other agent designated by Lead Counsel), or the Defendant Releasees based on any investments, costs, expenses, administration, allocations, calculation, payments, the withholding of taxes (including interest and penalties) owed by the Settlement Fund (or any losses incurred in connection therewith), or distributions that are made substantially in accordance with this Stipulation and the Settlement, the plan of allocation approved by the Court, or further orders of the Court.

4.14   All proceedings with respect to the administration, processing and determination of Claims and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of Claims, shall be subject to the jurisdiction of the Court.  All Settlement Class Members and Parties to this Settlement expressly waive trial by jury (to the extent any such right may exist) and any right of appeal or review with respect to such determinations.

## 5.   Release of Claims

5.1   The satisfaction of the obligations incurred pursuant to this Stipulation shall be in full and final disposition of the Action as against Defendant Releasees and as to any and all Released Claims.

5.2   Pursuant to the Judgment without further action by anyone, upon the Effective Date of the Settlement, Lead Plaintiff and each of the other Settlement Class Members, on behalf of themselves, and their respective heirs, executors, administrators, predecessors, successors, and assigns, in their capacities as such, shall be deemed to have, and by operation of this Stipulation, of law, and of the Judgment shall have, fully, finally and forever compromised, settled, released, resolved, relinquished, waived, and discharged each and every Released Plaintiffs' Claim against the Defendants and the other Defendant Releasees, and shall forever be barred and enjoined from prosecuting any or all of the Released Plaintiffs' Claims against any of the Defendant Releasees, whether or not such Settlement Class Member executes and delivers a Proof of Claim Form, seeks or obtains a distribution from the Settlement Fund, is entitled to receive a distribution under the Plan of Allocation approved by the Court, or has objected to any aspect of the Stipulation or the Settlement, the Plan of Allocation, or Lead Counsel's application for an award of attorneys' fees or Litigation Expenses.  This release shall not apply to any Excluded Claim.

5.3   Pursuant to the Judgment, without further action by anyone, upon the Effective Date of the Settlement, Defendants, on behalf of themselves, and their

respective heirs, executors, administrators, predecessors, successors, and assigns, in their capacities as such, shall be deemed to have, and by operation of this Stipulation, of law, and of the Judgment, shall have, fully, finally, and forever compromised, settled, released, resolved, relinquished, waived, and discharged each and every Released Defendants' Claim against the Plaintiff Releasees, and shall forever be barred and enjoined from prosecuting any or all of the Released Defendants' Claims against any of the Plaintiff Releasees.  This release shall not apply to any person or entity who or which submits a request for exclusion from the Settlement Class that is accepted by the Court.

5.4    Upon the Effective Date, Lead Plaintiff and each of the other Settlement Class Members and anyone claiming through or on behalf of any of them, are forever barred and enjoined from commencing, instituting, maintaining, or continuing to prosecute any action or proceeding in any court of law or equity, arbitration tribunal, administrative forum, or other forum of any kind, asserting  any Released Plaintiffs' Claims against any of the Defendant Releasees.

5.5    Upon the Effective Date, to the extent allowed by law, this Stipulation shall operate conclusively as an estoppel and full defense in the event, and to the extent, of any claim, demand, action, or proceeding brought by a Settlement Class Member against any of the Defendant Releasees with respect to any Released Plaintiffs' Claims, or brought by a Defendant against any of the Plaintiff Releasees with respect to any Released Defendants' Claim.

5.6    Notwithstanding  ¶¶5.2-5.5 above, nothing in the Judgment shall restrict or impair the rights of any Party to enforce or effectuate the terms of this Stipulation or the Judgment.

5.7    The Judgment shall, among other things, provide for the dismissal with prejudice of the Action against the Defendant Releasees, without costs to any Party or the D&O Insurers, except for the payments expressly provided for herein.

**6.    Terms of the Judgment**

6.1    If the Settlement contemplated by this Stipulation is approved by the Court, Lead Counsel and Defendants' Counsel shall request that the Court enter a Judgment, in the form attached hereto as Exhibit B.

**7.    Attorneys' Fees and Litigation Expenses**

7.1    Lead Counsel will apply to the Court for a collective award of attorneys' fees to Plaintiffs' Counsel to be paid from (and out of) the Settlement Fund.  Lead Counsel also will apply to the Court for reimbursement of Litigation Expenses, which may include a request for reimbursement of Lead Plaintiff's time, costs and expenses directly related to their representation of the Settlement Class, to be paid from (and out of) the Settlement Fund.  Lead Counsel's application for an award of attorneys' fees or Litigation Expenses is not the subject of any agreement between Defendants and Lead Plaintiff other than what is set forth in this Stipulation.

7.2    Any attorneys' fees and Litigation Expenses that are awarded by the Court shall be paid to Lead Counsel immediately upon award, notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on the Settlement or any part thereof, subject to Lead Counsel's obligation to make appropriate refunds or repayments to the Settlement Fund if the Settlement is terminated pursuant to the terms of this Stipulation or if, as a result of any appeal or further proceedings on remand, or successful collateral attack, the award of attorneys' fees or Litigation Expenses is reduced or reversed, and such order reducing or reversing the award has become Final.  Lead Counsel shall make the appropriate refund or repayment in full (including interest thereon at the same rate as would have been earned had those sums remained in the Escrow Account) no later than thirty (30) days after: (a) receiving from Defendants' Counsel notice of the termination of the Settlement; or (b) any order reducing or reversing the award of attorneys' fees or Litigation Expenses has become Final.  An award of

attorneys' fees or Litigation Expenses is not a necessary term of this Stipulation and is not a condition of the Settlement embodied herein.  Lead Counsel agrees that they are subject to the jurisdiction of the Court for purpose of enforcing this paragraph.  Neither Lead Plaintiff nor Lead Counsel may cancel or terminate the Settlement based on this Court's or any appellate court's ruling with respect to attorneys' fees or Litigation Expenses.

7.3    Lead Counsel shall allocate the attorneys' fees awarded amongst Plaintiffs' Counsel in a manner which they, in good faith, believe reflects the contributions of such counsel to the institution, prosecution, and settlement of the Action.    Defendant Releasees shall have no responsibility for or liability whatsoever with respect to the payment, allocation, or award of attorneys' fees or Litigation Expenses. The attorneys' fees and Litigation Expenses that are awarded to Plaintiffs' Counsel shall be payable solely from the Settlement Fund in the Escrow Account.

## 8.    Conditions of Settlement

8.1    The Effective Date of this Stipulation shall be conditioned on the occurrence or waiver of all of the following events:

(a)    entry of the Preliminary Approval Order, in the form set forth in Exhibit A attached hereto, in accordance with Section 3 above;

(b)    the Settlement Amount has been deposited into the Escrow Account in accordance with the provisions of ¶2.1 above;

(c)    entry of the Judgment in accordance with by paragraph 6.1 above;

(d)    the Judgment becoming Final, as defined in paragraph 1.19 above; and

(e)    that the Settlement is not otherwise terminated pursuant to the terms set forth in this Stipulation.

8.2    If all of the conditions specified in paragraph 8.1 above are not met, then this Stipulation shall be canceled and terminated subject to paragraph 9.3 below unless Lead Plaintiff and Defendants mutually agree in writing to proceed with this Stipulation.

**9.    Rights of Termination and Effects Thereof**

9.1    Defendants and Lead Plaintiff shall each have the right to terminate the Settlement and this Stipulation by providing written notice of their election to do so ("Termination Notice") to counsel for the other parties within thirty (30) days after the date on which any of the following occurs:

(a)    the Court declines to enter the Preliminary Approval Order in all material respects;

(b)    the Court declines to enter the Judgment in all material respects;

(c)    the Judgment is modified or reversed in any material respect on appeal;

(d)    in the event that the Court enters a judgment other than the one in the form of Exhibit B attached hereto, and neither of the Parties elects to terminate the Settlement, the date that such other judgment is modified or reversed in any material respect on appeal.

9.2    If, prior to the Final Approval Hearing, Persons who otherwise would be Settlement Class Members have filed with the Court valid and timely requests for exclusion ("Requests for Exclusion") from the Settlement Class in accordance with the provisions of the Preliminary Approval Order and the Notice, and such Persons in the aggregate have purchased or otherwise acquired TrueCar common stock in an amount that equals or exceeds the sum specified in a separate supplemental agreement between the Parties (the "Supplemental Agreement"), TrueCar shall have the option, but not the obligation, to terminate this Stipulation in accordance with the procedures set forth in the Supplemental Agreement ("Opt-out

Termination Option").  The Supplemental Agreement is confidential and will not be filed with the Court unless requested by the Court or a dispute among the Parties concerning its interpretation or application arises, but the Parties will file a statement identifying the existence of the Supplemental Agreement pursuant to Federal Rule of Civil Procedure 23(e)(1)(c)(2), and reference the Supplemental Agreement in the Notice.  Copies of all Requests for Exclusion received, together with copies of all written revocations of Requests for Exclusion (if any), shall be delivered to Defendants' Counsel within five (5) days of receipt thereof.

9.3    Unless otherwise ordered by the Court, in the event this Stipulation shall terminate, or be canceled, or shall not become effective for any reason, within five (5) business days after written notification of such event is sent by Defendants' Counsel or Lead Counsel to the Escrow Agent, the Escrow Agent for the Settlement Fund shall, upon written instructions from Defendants' Counsel, cause the Settlement Fund, including any attorneys' fees and costs paid from the Settlement Fund pursuant to paragraph 7 above, to revert back to the party that made the deposit into the Settlement Fund, together with any interest earned thereon, less any deductions for: (1) any Taxes and Tax Expenses pursuant to paragraphs 2.6-2.7 above due with respect to any interest earned by the Settlement Fund; and (2) any amounts reasonably and actually paid, incurred or due and owing pursuant to paragraph 2.9 above in connection with notice and administration of the Settlement provided for herein.  If this Stipulation is terminated pursuant to its terms, the Escrow Agent, at the request of Defendants or Lead Plaintiff, shall apply for any tax refund owed to the Settlement Fund and pay the proceeds of the tax refund, after deduction of any fees and expenses incurred in connection with such application(s) for refund, to Defendants (or their designate(s)).

9.4    If this Stipulation is terminated pursuant to its terms, each of the Parties shall be deemed to have reverted to his, her or its status prior to the execution of this Stipulation, and they shall proceed in all respects as if this

Stipulation had not been executed and the related orders had not been entered, shall retain all of their respective claims and defenses in the Action, and shall revert to their respective positions in the Action.  In such event, the terms and provisions of the Stipulation, with the exception of provisions of paragraphs 2.9, 7.2, 9.4, 10.1, 11.24, shall have no further force and effect with respect to each of the Parties and shall not be used in this Action or in any other proceeding for any purpose.

9.5    For the avoidance of doubt, no order of the Court or modification or reversal of any order of the Court concerning the Plan of Allocation or the amount of any attorneys' fees, costs, and expenses awarded by the Court shall constitute a condition to the Effective Date or grounds for cancellation or termination of the Stipulation.

**10.    No Admission of Wrongdoing**

10.1    Neither this Stipulation nor the Settlement set forth herein, whether or not consummated, nor any facts or terms of this Stipulation, negotiations, discussions, proceedings, acts performed or documents executed pursuant to or in furtherance of this Stipulation or the Settlement:

(a)    shall be (i) offered against any of the Defendant Releasees as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Defendant Releasees with respect to (a) the truth of any fact alleged by Lead Plaintiff; (b) the validity of any claim that was or could have been asserted in this Action or in any other litigation; (c) the deficiency of any defense that has been or could have been asserted in this Action or in any other litigation; (d) any liability, negligence, fault, or other wrongdoing of any kind of any of the Defendant Releasees; or (e) any damages suffered by Plaintiff or the Settlement Class; or (ii) in any way referred to for any other reason against any of the Defendant Releasees, in any civil, criminal, or administrative action or proceeding (including any arbitration) other than such proceedings as may be necessary to effectuate the provisions of this Stipulation;

(b)     shall be (i) offered against any of the Plaintiff Releasees as evidence of, or construed as, or deemed to be evidence of any presumption, concession or admission by any of the Plaintiff Releasees (a) that any of their claims are without merit, that any of the Defendant Releasees had meritorious defenses, or that damages recoverable under the Amended Complaint would not have exceeded the Settlement Amount; or (b) with respect to any liability, negligence, fault or wrongdoing of any kind; or (ii) in any way referred to for any other reason as against any of the Plaintiff Releasees, in any civil, criminal, or administrative action or proceeding (including any arbitration) other than such proceedings as may be necessary to effectuate the provisions of this Stipulation; or

(c)     shall be construed against any of the Releasees as an admission, concession, or presumption that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial; *provided, however,* that if this Stipulation is approved by the Court, the Parties and the Releasees and their respective counsel may refer to it to effectuate the protections from liability granted hereunder or otherwise to enforce the terms of the Settlement.

**11.    Miscellaneous Provisions**

11.1   This Stipulation and the Exhibits attached hereto constitute the entire agreement between the Parties with regard to the subject matter hereof and supersede any prior or contemporaneous written or oral agreements or understandings between the Parties.

11.2   No modification or amendment of this Stipulation shall be valid unless made in writing and signed by or on behalf of each party hereto, or their respective successors-in-interest.  No representations, warranties, or inducements have been made to any party concerning this Stipulation or its Exhibits, other than the representations and warranties contained and memorialized in such documents.

Except as otherwise provided for herein, each party shall bear his, her, or its own attorneys' fees and costs and expenses.

11.3  As set forth in the Class Action Fairness Act of 2005 ("CAFA"), TrueCar shall timely serve a CAFA notice within ten (10) calendar days of the filing of this Stipulation with the Court.  TrueCar shall be responsible for all costs and expenses related thereto.

11.4  The Parties intend this Stipulation and the Settlement to be a final and complete resolution of all disputes asserted or which could be asserted by Lead Plaintiff and any other Settlement Class Members against the Defendant Releasees with respect to the Released Plaintiffs' Claims.  Accordingly, except in the event of the termination of this Settlement, Lead Plaintiff, and its counsel, and Defendants, and their counsel, agree not to assert in any forum that this Action was brought by Lead Plaintiff or defended by Defendants in bad faith and without a reasonable basis.  No Party shall assert any claims of any violation of Rule 11 of the Federal Rules of Civil Procedure relating to the institution, prosecution, defense, or settlement of this Action.  The Parties agree that the amounts paid and the other terms of the Settlement were negotiated at arm's length and in good faith by the Parties, including through a mediation process, and reflect the Settlement that was reached voluntarily after extensive negotiations and consultation with experienced legal counsel, who were fully competent to assess the strengths and weaknesses of their respective clients' claims or defenses.

11.5  While retaining their right to deny that the claims asserted in the Action were meritorious, Defendants and their counsel, in any statement made to any media representative (whether or not for attribution) will not assert that the Action was commenced or prosecuted in bad faith, nor will they deny that the Action was commenced and prosecuted in good faith and is being settled voluntarily after consultation with competent legal counsel.  Likewise, while retaining their right to assert their claims in the action were meritorious, Lead

Plaintiff and its counsel, in any statement made to any media representative (whether or not for attribution) will not assert that Defendants' defenses were asserted in bad faith, nor will they deny that Defendants defended the Action in good faith and that the action is being settled voluntarily after consultation with competent legal counsel.   In all events, Lead Plaintiff, and its counsel, and Defendants, and their counsel, shall not make any accusations of wrongful or actionable conduct by either Party concerning the prosecution, defense, and resolution of the Action, and shall not otherwise suggest that the Settlement constitutes an admission of any claim or defense alleged.

11.6  Defendants and any Defendant Releasee may file the Stipulation and/or the Judgment in any action that may be brought against them in order to support a defense, claim, or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

11.7  All agreements made, and orders entered, during the course of the Action relating to the confidentiality of information shall survive this Settlement.

11.8  All of the Exhibits to this Stipulation are material and integral parts hereof and are fully incorporated herein by this reference.   Notwithstanding the foregoing, in the event that there exists a conflict or inconsistency between the terms of this Stipulation and the terms of any exhibit attached hereto, the terms of the Stipulation shall prevail.

11.9  Lead Counsel, on behalf of the Settlement Class, is expressly authorized to take all appropriate action required or permitted to be taken by the Settlement Class pursuant to this Stipulation to effectuate its terms and also are expressly authorized to enter into any modifications or amendments to this Stipulation on behalf of the Settlement Class which they deem appropriate.

11.10 All counsel and any other Person executing this Stipulation and any of the Exhibits hereto, or any related Settlement documents, warrant and represent that they have the full authority to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to the Stipulation to effectuate its terms.

11.11 Lead Counsel and Defendants' Counsel agree to cooperate fully with one another in seeking Court approval of the Preliminary Approval Order and the Settlement, as embodied in this Stipulation, and to use best efforts promptly to agree upon and execute all such other documentation as may be reasonably required to obtain final approval by the Court of the Settlement.

11.12 This Stipulation may be executed in one or more counterparts, including by signature transmitted by facsimile or email, or by a .pdf/.tif image of the signature transmitted via email. The signatures so transmitted shall be given the same effect as the original signatures.  All executed counterparts and each of them shall be deemed to be one and the same instrument.

11.13 This Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties, including any and all Releasees and any corporation, partnership, or other entity into or with which any Party hereto may merge, consolidate, or reorganize.

11.14 This Stipulation shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Parties, it being recognized that it is the result of arm's-length negotiations among the Parties and all Parties have contributed substantially and materially to the preparation of this Stipulation.

11.15 All time periods set forth herein shall be computed in calendar days unless otherwise expressly provided.  In computing any period of time prescribed or allowed by the terms of this Stipulation or by order of Court, the day of the act, event, or default from which the designated period of time begins to run shall not be

included.  The last day of the period so computed shall be included, unless it is a Saturday, a Sunday or a legal holiday, in which case the period shall run until the end of the next day that is not one of the aforementioned days.  As used in the preceding sentence, "legal holiday" includes New Year's Day, Martin Luther King, Jr. Day, Presidents' Day, Memorial Day, Independence Day, Labor Day, Columbus Day, Veterans' Day, Thanksgiving Day, Christmas Day and any other appointed as a federal holiday.

11.16 The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

11.17 The administration and consummation of the Settlement as embodied in this Stipulation shall be under the authority of the Court, and the Court shall retain jurisdiction for the purpose of entering orders providing for awards of attorneys' fees and Litigation Expenses to Plaintiffs' Counsel, and enforcing the terms of this Stipulation, including the Plan of Allocation (or such other plan of allocation as may be approved by the Court) and the distribution of the Net Settlement Fund to Settlement Class Members.

11.18 The waiver by one Party of any breach of this Stipulation by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Stipulation.

11.19 Any action arising under or to enforce this Stipulation or any portion thereof, shall be commenced and maintained only in this Court.

11.20 In the event of the entry of a final order of a court of competent jurisdiction determining the transfer of money to the Settlement Fund or any portion thereof to be a preference, voidable transfer, fraudulent transfer, or similar transaction and any portion thereof is required to be returned (but not promptly deposited into the Settlement Fund by others), then, at the election of Lead Plaintiff, Lead Plaintiff and Defendants shall jointly move the Court to vacate and set aside the releases given and the Judgment, in which event the releases and Judgment

shall be null and void, and the Parties shall be restored to their respective positions in the litigation as provided in paragraphs 9.3 and 9.4 above and any cash amounts in the Settlement Fund (less any Taxes paid, due or owing with respect to the Settlement Fund and less any Notice and Administration Costs actually incurred, paid or payable) shall be returned as provided herein.

11.21 This Stipulation and the Exhibits hereto shall be considered to have been negotiated, executed, and delivered, and to be wholly performed, in the State of California, and the construction, interpretation, operation, effect and validity of this Stipulation, the Supplemental Agreement and all documents necessary to effectuate it shall be governed by the internal laws of the State of California without regard to conflicts of laws, except to the extent that federal law requires that federal law govern.

11.22 If any Party is required to give notice to another Party under this Stipulation, such notice shall be in writing and shall be deemed to have been duly given upon receipt of hand delivery, facsimile or email transmission, with confirmation of receipt. Any written notice required pursuant to or in connection with this Stipulation shall be addressed to counsel as follows:

For Lead Plaintiff:

Lester R. Hooker
Saxena White P.A.
150 E. Palmetto Park Road, Suite 600
Boca Raton, FL 33432
Office: (561) 394-3399
Fax: (561) 394-3382
Email: lhooker@saxenawhite.com

For Defendants:

Jerome F. Birn, Jr.
Wilson Sonsini Goodrich & Rosati
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
Email: jbirn@wsgr.com

11.23 No opinion or advice concerning the tax consequences of the proposed Settlement to individual Settlement Class Members is being given or will be given by the Parties or their counsel; nor is any representation or warranty in this regard made by virtue of this Stipulation.  Each Settlement Class Member's tax obligations, and the determination thereof, are the sole responsibility of the Settlement Class Member, and it is understood that the tax consequences may vary depending on the particular circumstances of each individual Settlement Class Member.

11.24 Whether or not the Stipulation is approved by the Court and whether or not the Stipulation is consummated, or the Effective Date occurs, the Parties and their counsel shall use their best efforts to keep all negotiations, discussions, acts performed, agreements, drafts, documents signed and proceedings in connection with the Stipulation confidential.

**IN WITNESS WHEREOF**, the Parties hereto have caused the Stipulation to be executed, by their duly authorized attorneys dated as of August 2, 2019.

**SAXENA WHITE P.A.**

By: _____

Maya Saxena (admitted *pro hac vice*)
Joseph E. White, III (admitted *pro hac vice*)
Lester R. Hooker (241590)
Dianne M. Pitre (286199)
150 E. Palmetto Park Road, Suite 600
Boca Raton, FL 33432
Telephone: (561) 394-3399
Facsimile: (561) 394-3382
E-mail:    msaxena@saxenawhite.com
           jwhite@saxenawhite.com
           lhooker@saxenawhite.com
           dpitre@saxenawhite.com

-and-

Steven B. Singer (admitted *pro hac vice*)
Kyla Grant (admitted *pro hac vice*)
Sara DiLeo (admitted *pro hac vice*)
10 Bank Street, 8th Floor
White Plains, NY 10606
Telephone: (914) 437-8551

42

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Facsimile:  (888) 631-3611
E-mail:      ssinger@saxenawhite.com
                 kgrant@saxenawhite.com
                 sdileo@saxenawhite.com

*Lead Counsel for Lead Plaintiff and the Class*

**KAPLAN FOX & KILSHEIMER LLP**

Justin B. Farar (SBN 211556)
12400 Wilshire Boulevard; Suite 820
Los Angeles, CA 90025
Telephone: 310.575.8604
Facsimile: 310.444.1913
Email: jfarar@kaplanfox.com

-and-

Laurence D. King (SBN 206423)
Mario M. Choi (SBN 243409)
350 Sansome Street, Suite 400
San Francisco, CA 94104
Telephone: 415.772.4700
Facsimile: 415.772.4707
Email: lking@kaplanfox.com
          mchoi@kaplanfox.com

Robert N. Kaplan (admitted *pro hac vice*)
Jeffrey P. Campisi (admitted *pro hac vice*)
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714
Email: rkaplan@kaplanfox.com
          jcampisi@kaplanfox.com

*Liaison Counsel for Lead Plaintiff and the Class*

**WILSON SONSINI GOODRICH & ROSATI, PC**

By: *Catherine E. Moreno*
Boris Feldman, State Bar No. 128838
Jerome F. Birn, Jr., State Bar No. 128561
Catherine E. Moreno, State Bar No. 264517
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile:  (650) 565-5100
Email: boris.feldman@wsgr.com
          jbirn@wsgr.com
          cmoreno@wsgr.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-and-

Nicholas R. Miller, State Bar No. 274243
1700 K Street NW
Washington, D.C. 20006
Telephone: (202) 973-8800
Facsimile: (202) 973-8899
Email: Nmiller@wsgr.com

*Attorneys for Defendants TrueCar, Inc. and
the Individual Defendants*