**SAXENA WHITE P.A.**
Maya Saxena
Joseph E. White, III
Lester R. Hooker (241590)
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Telephone:   (561) 394-3399
Facsimile:   (561) 394-3382
E-mail: msaxena@saxenawhite.com
          jwhite@saxenawhite.com
          lhooker@saxenawhite.com

-and-

Steven B. Singer
10 Bank Street, 8th Floor
White Plains, NY 10606
Telephone:   (914) 437-8551
Facsimile:   (888) 631-3611
E-mail: ssinger@saxenawhite.com

*Lead Counsel for Lead Plaintiff
and the Class*

**KAPLAN FOX &
KILSHEIMER LLP**
Justin B. Farar (211556)
12400 Wilshire Boulevard
Suite 820
Los Angeles, CA 90025
Telephone: 310.575.8604
Facsimile: 310.444.1913
E-mail: jfarar@kaplanfox.com

-and-

Laurence D. King (206423)
Mario M. Choi (243409)
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Telephone: 415.772.4700
Facsimile: 415.772.4707
Email: lking@kaplanfox.com
          mchoi@kaplanfox.com

*Liaison Counsel for Lead Plaintiff
and the Class*

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LEON D. MILBECK, on behalf of himself and all others similarly situated<br><br>Plaintiff,<br><br>vs.<br><br>TRUECAR, INC., et al.,<br><br>Defendants. | No. 2:18-cv-02612-SVW-AGR<br><br>CLASS ACTION<br><br>**LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT** |

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL
APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT

Case No. 2:18-cv-02612-SVW

# **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................... 1

II.     THE SETTLEMENT WARRANTS FINAL APPROVAL ............................ 4

    A.      Lead Plaintiff and Lead Counsel Have Adequately Represented the Class ............................................................... 6

    B.      The Settlement is the Result of Arm's Length Negotiations .................... 7

    C.      The Relief Provided for the Settlement Class is Adequate ..................... 9

        1.      The Amount Offered in the Settlement Weighs in Favor of Final Approval ............................................. 9

        2.      The Settlement Weighs the Strength of Lead Plaintiff's Claims with the Substantial Risks of Continuing Litigation ............................................... 10

        3.      The Proposed Method for Distributing Relief to the Settlement Class is Effective ............................... 13

        4.      Lead Counsel's Fee and Expense Request is Fair and Reasonable .............................................. 14

        5.      The Parties Have No Side Agreements Besides Opt-Outs ............................................................ 15

        6.      All Settlement Class Members are Treated Equitably ............................................................ 15

    D.      The Extent of Discovery Completed and the Stage of the Proceedings Favor Final Settlement Approval ........................ 16

    E.      The Risk of Maintaining a Class Action Supports Approval ................ 17

    F.      The Experience and Views of Counsel Favor Settlement .................... 17

    G.      The Positive Reaction of the Class Supports Settlement Approval ........................................................... 18

III.    NOTICE TO THE SETTLEMENT CLASS SATISFIED THE REQUIREMENTS OF RULE 23, DUE PROCESS, AND THE PSLRA ................................................................................ 19

IV.     THE PLAN OF ALLOCATION IS FAIR, REASONABLE AND ADEQUATE ................................................................................ 22

V.      CONCLUSION ................................................................................ 24

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Canh Le v. DIRECTV, LLC,*
  2018 WL 5928192 (C.D. Cal. May 15, 2018) ......................................14

*Cheng Jiangchen v. Rentech, Inc.,*
  2019 WL 5173771 (C.D. Cal. Oct. 10, 2019)...............................*passim*

*Churchill Village LLC v. Gen. Elec.,*
  361 F.3d 566 (9th Cir. 2004)..............................................................18

*City of Detroit v. Grinnell Corp.,*
  495 F.2d 448 (2nd Cir. 1974)............................................................10

*City of Providence v. Aeropostale, Inc.,*
  2014 WL 1883494 (S.D.N.Y. May 9, 2014)........................................19

*Class Plaintiffs v. City of Seattle,*
  955 F.2d 1268 (9th Cir. 1992)......................................................13, 22

*Destefano v. Zynga, Inc.,*
  2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ......................................21

*Hanlon v. Chrysler Corp.,*
  150 F.3d 1011 (9th Cir. 1998)...................................................3, 5, 11

*Harris v. U.S. Physical Therapy, Inc.,*
  2012 WL 3277278 (D. Nev. July 18, 2012)........................................18

*Hefler v. Wells Fargo & Co.,*
  2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) .......................................8

*Hefler v. Wells Fargo & Co.,*
  2018 WL 6619983 (N.D. Cal. Dec. 18, 2018)......................5, 6, 14, 21

*In re Amgen Inc. Sec. Litig.,*
  2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) .....................................4

*In re Carrier IQ, Inc. Consumer Privacy Litig.,*
  2016 WL 4474366 (N.D. Cal. Aug. 25, 2016) ....................................15

*In re China Med. Corp. Sec. Litig.*,
   2014 WL 12581781 (C.D. Cal. Jan. 7, 2014) ...................................................8

*In re Extreme Networks, Inc. Sec. Litig.*,
   2019 WL 3290770 (N.D. Cal. July 22, 2019).................................................*passim*

*In re Immune Response Sec. Litig.*,
   497 F. Supp. 2d 1166 (S.D. Cal. 2007)..............................................................17

*In re LJ Int'l Inc. Sec. Litig.*,
   2009 WL 10669955 (C.D. Cal. Oct. 19, 2009)..................................................10

*In re Neopharm, Inc. Sec. Litig.*,
   705 F.Supp.2d 946 (N.D. Ill. 2010) ..................................................................11

*In re Omnivision Tech. Inc.*,
   559 F.Supp.2d 1036 (N.D. Cal. 2008) ...................................................12, 15, 22

*In re Oracle Corp. Sec. Litig.*,
   627 F.3d 376 (9th Cir. 2010)..............................................................................11

*In re Oracle Sec. Litig.*,
   1994 WL 502054 (N.D. Cal. June 18, 1994) .....................................................22

*In re Vivendi Universal, S.A., Sec. Litig.*,
   2012 WL 362028 (S.D.N.Y. Feb. 6, 2012) ........................................................12

*In re Zynga Inc. Secs. Litig.*,
   2015 WL 6471171 (N.D. Cal. Oct. 27, 2015)................................................7, 15

*International Broth. Of Elec. Workers Local 697 Pension Fund v.*
   *Int'l Game Tech., Inc.*,
   2012 WL 5199742 (D. Nev. Oct. 19, 2012) .......................................................10

*Loritz v. Exide Techs.*,
   2016 WL 7246076 (C.D. Cal. June 15, 2016) ....................................................14

*Milbeck v. TrueCar, Inc.*,
   2019 WL 2353010 (C.D. Cal. May 24, 2019) ......................................................6

*Mild v. PPG Indus., Inc.*,
   2019 WL 3345714 (C.D. Cal. July 25, 2019)..................................................9, 15

*Mullane v. Central Hanover Bank & Trust Co.*,
339 U.S. 306 (1950) .................................................................................. 19

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) .................................................. 11, 12, 18

*Officers for Justice v. Civil Serv. Comm'n of City and
County of San Francisco*,
688 F.2d 615 (9th Cir. 1982)........................................................... 1, 6, 9

*Pataky v. Brigantine, Inc.*,
2018 WL 3020159 (S.D. Cal. June 18, 2018).......................................... 7

*Riker v. Gibbons*,
2010 WL 4366012 (D. Nev. Oct. 28, 2010) ........................................... 11

*Rodriguez v. West. Pub. Corp.*,
563 F.3d 948 (9th Cir. 2009)............................................................ 19, 20

*Silber v. Mabon*,
18 F.3d 1449 (9th Cir. 1994)................................................................ 19

*Sudunagunta v. NantKwest, Inc.*,
2019 WL 2183451 (C.D. Cal. May 13, 2019) ......................... 12, 16, 18

*Todd v. STAAR Surgical Co.*,
2017 WL 4877417 (C.D. Cal. Oct. 24, 2017)................................... 7, 16

*Unutoa v. Interstate Hotels & Resorts, LLC*,
2016 WL 7496127 .................................................................................. 14

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002)............................................................... 14

*Vizcaino v. U.S. Dist. Court*,
173 F.3d 713 (9th Cir. 1999) ................................................................ 17

**STATUTES**

15 U.S.C. § 78u-4(a)(7) ........................................................................... 20

**RULES**

Fed. R. Civ. P. 23(e) ........................................................................*passim*

Fed. R. Civ. P. 23(c)(1)...........................................................................................17

**OTHER AUTHORITIES**

4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11:50
(4th ed. 2002) ...................................................................................................11

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Court-appointed Lead Plaintiff and Class Representative Oklahoma Police Pension and Retirement Fund ("Class Representative," "Lead Plaintiff," or "Plaintiff") respectfully submits this memorandum of law in support of its motion for final approval of the Settlement, and approval of the proposed Plan of Allocation.[1]

## I. INTRODUCTION

After nearly two years of intensely hard-fought litigation, Lead Plaintiff is pleased to present the Settlement for the Court's consideration and final approval. The Settlement provides for the payment of $28.25 million in cash for the benefit of the Settlement Class, and is an exceptional recovery for the Class, representing approximately 12% to 43% of the Class's potential recoverable damages— multiples ahead of the typical recovery in securities class actions.   Significantly, the Settlement is the embodiment of the Ninth Circuit's "policy favoring settlement, particularly in class actions," securing an immediate and meaningful benefit for the Settlement Class that avoids the risk, delay and expense inherent in years of continued litigation.   *Cheng Jiangchen v. Rentech*, *Inc*., 2019 WL 5173771, at *5 (C.D. Cal. Oct. 10, 2019) (Wu, J.); *Officers for Justice v. Civil Serv. Comm'n of City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) ("[V]oluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation").

---

[1] Lead Plaintiff respectfully refers the Court to the accompanying Declaration of Lester R. Hooker in Support of Lead Plaintiff's Motion for Final Approval of Class Action Settlement, the Plan of Allocation, and Request for Attorneys' Fees and Expenses ("Hooker Decl.") for a detailed description of the case and the Settlement.  Unless otherwise noted, capitalized terms have the meaning set forth in the Stipulation and Agreement of Settlement, dated August 2, 2019 (ECF No. 172, the "Stipulation").   Additionally, unless otherwise indicated, all emphasis in this brief has been added, and all internal citations and quotation marks have been omitted.  On October 15, 2019, the Court preliminarily approved the Settlement and the Notice plan.  On or about November 12, 2019, Defendants caused the $28.25 million Settlement Amount to be deposited into an escrow account for the benefit of the Settlement Class.

Indeed, Lead Plaintiff and Lead Counsel recognized that if they had proceeded with the litigation, they would have faced significant risks and obstacles in establishing at summary judgment and trial all of the elements of their claims, including damages.  The gravamen of Lead Plaintiff's claims is that, throughout the Class Period, Defendants misrepresented TrueCar's business and failed to disclose to investors that TrueCar's most important and largest "affinity" partner, United Services Automobile Association ("USAA"), had informed Defendants that it planned to significantly redesign its car-buying website before gaining access to the TrueCar website, which change would significantly decrease web traffic and negatively impact TrueCar's financial results.  Plaintiff further alleged that TrueCar's stock price was artificially inflated as a result of Defendants' false and misleading statements, and that TrueCar's stock price declined over 35% when the truth regarding Defendants' misrepresentations was revealed.

While Lead Plaintiff and Lead Counsel strongly believed in the merits of their claims, Defendants vehemently disputed both liability and damages, and at summary judgment and trial would have argued, inter alia, that (1) they did not know about the USAA website redesign until very shortly before that redesign was implemented; (2) they did not know that such redesign would have a negative impact on the Company; (3) their statements accurately described the state of TrueCar's business, were forward-looking statements protected by the PSLRA Safe Harbor, and/or fully informed investors of the risks of which Plaintiff complained; and (4) Defendants' statements accurately reported during the Class Period that TrueCar's business was performing at record levels and management was rightly confident about the Company's fiscal future.  Defendants also had viable arguments that not all of the decline in the stock price that occurred at the end of the Class Period was related to Plaintiff's allegations, but rather was related to myriad other factors unrelated to the alleged fraud.  Significantly, had the Court

1   or a jury accepted these arguments, either in whole or in part, damages in the case

2   would have been dramatically reduced, or even eliminated.

3       By the time the Parties agreed to the Settlement, Lead Plaintiff had

4   developed a full and clear understanding of the strengths and weaknesses of the

5   claims and defenses asserted in this Action.  Indeed, the Settlement is the product

6   of Lead Plaintiff's extensive litigation efforts, including: (i) a thorough

7   investigation, which included locating and interviewing numerous confidential

8   witnesses who provided Lead Plaintiff with significant information relevant to its

9   claims; (ii) the filing of a highly detailed amended complaint; (iii) consultation

10  with various industry experts; (iv) successfully opposing Defendants' motion to

11  dismiss; (v) engaging in extensive class certification discovery and successfully

12  moving for class certification; (vi) engaging in comprehensive fact discovery,

13  including obtaining, reviewing, and analyzing approximately 3.5 million pages of

14  documents on an expedited schedule; (vii) engaging in significant discovery

15  motion practice; (viii) defending depositions of Lead Plaintiff's Executive

16  Director, Lead Plaintiff's investment manager, and Lead Plaintiff's expert on

17  market efficiency, and preparing for 24 fact witness depositions; (ix) the

18  submission of multiple, detailed mediation statements setting forth Plaintiff's

19  positions on the hotly disputed issues in the case; and (x) two formal mediation

20  sessions before noted mediators involving rigorous and extensive negotiations.

21      In light of the result achieved, the risks of litigating this Action, and the

22  substantial delay that would be entailed in the continued litigation of this action

23  through trial and the inevitable subsequent appeals, Lead Plaintiff and Lead

24  Counsel strongly believe that the Settlement is a highly favorable result for the

25  Settlement Class that is supported by each of the factors set forth by the Ninth

26  Circuit in *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1026 (9th Cir. 1998) and the

27  recently amended Rule 23(e)(2).  The Settlement—which has been endorsed by

28

Mr. Jed Melnick, who is a highly qualified, respected, and independent mediator, as well as by Lead Plaintiff, a sophisticated institutional investor—eliminates these substantial risks and provides an immediate $28.25 million cash recovery to the Settlement Class.  Accordingly, Lead Plaintiff respectfully submits that the Court should approve the Settlement as fair, adequate and reasonable.

Lead Plaintiff also requests that the Court approve the proposed Plan of Allocation for the Net Settlement Fund.  The Plan of Allocation is designed to equitably distribute the Settlement Fund proceeds on a *pro rata* basis to Authorized Claimants.  It was prepared with the assistance of Lead Plaintiff's damages expert, who calculated the artificial inflation in the prices of TrueCar common stock during the Settlement Class Period, and is substantially similar to numerous other plans that have been approved in this District and around the country as fair, adequate, and reasonable.

## II.     THE SETTLEMENT WARRANTS FINAL APPROVAL

The Ninth Circuit and courts around the country recognize that there is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Amgen Inc. Sec. Litig.,* 2016 WL 10571773, at *2 (C.D. Cal. Oct. 25, 2016).  "Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Rentech,* 2019 WL 5173771, at *5.

Federal Rule of Civil Procedure 23(e) set forth the procedures for approval of class action settlements.  Under recent amendments to the Federal Rules of Civil Procedure, district courts must now consider a list of factors delineated in Rule 23(e)(2), which are similar to the Ninth Circuit's longstanding factors and considerations:

(A)   the class representatives and class counsel have adequately represented the class;

(B)   the proposal was negotiated at arm's length;

(C)   the relief provided for the class is adequate, taking into account:

     (i)   the costs, risks, and delay of trial and appeal;

     (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

     (iii)   the terms of any proposed award of attorney's fees, including timing of payment; and

     (iv)   any agreement required to be identified under Rule 23(e)(3); and

(D)   the proposal treats class members equitably relative to each other.

These factors do not "displace" any previously adopted factors, but "focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Rentech*, 2019 WL 5173771, at *4 (citing FED. R. CIV. P. 23(e) Advisory Committee's Note to 2018 amendment, 324 F.R.D. 904, 918). "Accordingly, the Court [should] appl[y] the framework set forth in Rule 23, while continuing to draw guidance from the Ninth Circuit's factors and relevant precedent." *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *4 (N.D. Cal. Dec. 18, 2018) ("*Hefler II*").

The Ninth Circuit considers the following *Hanlon* factors in determining whether a proposed settlement is fair, adequate, and reasonable: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) reaction of the class members to the proposed settlement. *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir. 1998). "The

relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at 625.

As discussed below, the proposed $28.25 million Settlement readily satisfies each of the applicable factors.

### A.  Lead Plaintiff and Lead Counsel Have Adequately Represented the Class

Lead Plaintiff and Lead Counsel have already been determined to be adequate representatives of the Class. *See Milbeck v. TrueCar, Inc.,* 2019 WL 2353010, at **3-4 (C.D. Cal. May 24, 2019) (Court held that Lead Plaintiff is an "adequate putative class representative" and the "exact type of sophisticated institutional investor that Congress intended to lead securities class actions under the PSLRA"). As the Court has recognized, Lead Plaintiff has demonstrated its ability and willingness to pursue the Action on the Class' behalf through its active involvement in the litigation. *See Id.* at *3 ("Lead Plaintiff has vigorously prosecuted this action, including . . . travel to Chicago for a deposition, regularly consulting with counsel, and providing and reviewing documents and testimony"). Moreover, Lead Counsel has substantial securities litigation experience and is recognized as a leading expert in the field. *See* Hooker Declaration Ex. C (C) (Saxena White firm resume)*; Rentech*, 2019 WL 5173771, at *5 ("The Court has no reason to believe that Plaintiffs' Counsel did not adequately represent the class").

Given this zealous prosecution of the action, Lead Plaintiff and its counsel "possessed 'sufficient information to make an informed decision about settlement.'" *Hefler II*, 2018 WL 6619983, at *6.  Specifically, Lead Plaintiff's decision to settle this case was informed by a thorough investigation of the relevant

claims; the filing of a detailed Complaint; success in defeating a motion to dismiss and in obtaining class certification; extensive review of approximately 3.5 million pages of documents obtained from Defendants and third parties; active discovery motion practice; consultation with experts; and research and preparation for depositions. Plaintiff's claims are typical of and coextensive with the claims of the Settlement Class, and they have no antagonistic interests; rather, Plaintiff's interest in obtaining the largest possible recovery in this Action is aligned with the other Settlement Class Members. The Settlement is demonstrably the product of well-informed negotiations and vigorous advocacy on behalf of TrueCar shareholders. This factor clearly supports approval of the Settlement.

### B.   The Settlement is the Result of Arm's Length Negotiations

There is a strong presumption of fairness to settlements negotiated at arm's-length by experienced counsel and with the assistance of an independent mediator. *See, e.g., Todd v. STAAR Surgical Co*., 2017 WL 4877417, at *2 (C.D. Cal. Oct. 24, 2017) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive"); *In re Zynga Inc. Secs. Litig*., 2015 WL 6471171, at *9 (N.D. Cal. Oct. 27, 2015) (holding that the use of mediator and fact that significant discovery had been conducted "support the conclusion that the Plaintiff was appropriately informed in negotiating a settlement").

"A settlement is presumed to be fair if reached in arms-length negotiations after relevant discovery has taken place." *Pataky v. Brigantine, Inc*., 2018 WL 3020159, at *3 (S.D. Cal. June 18, 2018).  As detailed above, the Settlement was reached after the Parties had conducted substantial discovery. All counsel possessed a firm understanding of the strengths and weaknesses of their respective claims and defenses.

Moreover, the Settlement came about only after two in-person mediation sessions under the guidance of experienced and prominent mediators, as well as

numerous direct negotiations between counsel. The Parties conducted settlement discussions in February 2019, before this Court issued its motion to dismiss order, that were unsuccessful.   Then, after the Court denied Defendants' motion to dismiss, certified the Class, and after significant document discovery, the Parties restarted negotiations in May 2019, under the supervision of Mr. Jed Melnick.  Mr. Melnick is an acclaimed, widely-respected JAMS mediator who has mediated hundreds of complex disputes with aggregate values in the billions of dollars.  He is also the Managing Mediator for the Weinstein Melnick Team, which includes the Hon. Daniel Weinstein (Ret.), one of the nation's preeminent mediators of complex civil disputes.  After written submissions addressing the facts and law of the case, including, among other things, Defendants' defenses on the issues of falsity, scienter and loss causation, a mediation session on June 5, 2019 and intense continued discussions with Mr. Melnick, Mr. Melnick made a mediator's recommendation to settle the case, which the Parties accepted on July 2, 2019.

Accordingly, the advanced posture of this case, and the deliberative nature of the negotiations evidence a fair process involving good-faith arm's-length bargaining. *See, e.g., Hefler v. Wells Fargo & Co*., 2018 WL 4207245, at \*9 (N.D. Cal. Sept. 4, 2018) ("*Hefler I*") ("[I]n light of the fact that the Settlement was reached after the parties engaged in motion practice and participated in multiple days of formal mediation, the Court concludes that the negotiations and agreement were non-collusive."); *In re China Med. Corp. Sec. Litig*., 2014 WL 12581781, at \*5 (C.D. Cal. Jan. 7, 2014) ("Moreover, this settlement is the result of a mediation held before Jed Melnick, Esq., a JAMS mediator. . . Mr. Melnick's involvement in the settlement supports the argument that it is non-collusive").

**C.    The Relief Provided for the Settlement Class is Adequate**

    **1.    The Amount Offered in the Settlement Weighs in Favor of Final Approval**

The $28,250,000 cash Settlement constitutes a meaningful percentage of the maximum possible recovery for the Settlement Class, especially taking into account the uncertainty, risks, and costs associated with any attempt to obtain a greater amount. *Mild v. PPG Indus., Inc.*, 2019 WL 3345714, at *6 (C.D. Cal. July 25, 2019) ("Based on the significant risks of continued litigation and the Settlement amount, the Court finds that the amount offered for settlement is fair"). To evaluate the adequacy of the settlement amount, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Extreme Networks, Inc. Sec. Litig.,* 2019 WL 3290770, at *9 (N.D. Cal. July 22, 2019). But "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Officers for Justice*, 688 F.2d at 628.

Lead Plaintiff retained Chad Coffman of Global Economics Group, a highly experienced damages expert to opine on damages in this case, and based on Mr. Coffman's analysis, Lead Plaintiff estimates that if they were successful at trial, damages could range from $66 million to $240 million. Defendants had credible arguments that, if accepted by the Court or the jury, would materially impact the amount of recoverable damages. For example, Defendants would have argued that they did not know the full details and scope of the USAA website redesign until shortly before that redesign was implemented in June 2017, and that they did not see the impact of that redesign on TrueCar's business until the fall of 2017. Such arguments had the real potential to dramatically shorten the length of the Class Period, which would have significantly reduced damages. Defendants also would have argued that much of the decline in the stock price that occurred at the end of

the Class Period was not attributable to the alleged fraud. The range of recovery here was thus wide and uncertain.

Accordingly, the Settlement represents a recovery of 12% to 43% of Plaintiff's potential recoverable damages. In comparison, the median recovery in securities class actions in 2018 was approximately 2.6% of estimated damages. *See* Stefan Boettrich and Svetlana Starykh, Recent Trends in Securities Class Action Litigation: 2018 Full-Year Review (NERA Jan. 29, 2019) at p. 36, Fig. 28; *see also International Broth. Of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.*, 2012 WL 5199742, at *3 (D. Nev. Oct. 19, 2012) (approving settlement where recovery was 3.5% of maximum damages and noting "[t]his amount is within the median recovery in securities class actions settled in the last few years").

Indeed, settlements valued at much lower percentages of possible damages are routinely approved. *See, e.g., Rentech,* 2019 WL 5173771, at *9 ("A 10% recovery of estimated damages is a favorable outcome in light of the challenging nature of securities class action cases."); *In re LJ Int'l Inc. Sec. Litig.,* 2009 WL 10669955, at *4 (C.D. Cal. Oct. 19, 2009) (approving securities fraud class action settlement where recovery was 4.5% of maximum damages); *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n. 2 (2nd Cir. 1974) ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."). Accordingly, the Settlement Amount also weighs in favor of approval.

## 2. The Settlement Weighs the Strength of Lead Plaintiff's Claims with the Substantial Risks of Continuing Litigation

In assessing "the costs, risks, and delay of trial and appeal," Fed R. Civ. P. 23(e)(2)(C)(i), courts in the Ninth Circuit evaluate "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; [and]

the risk of maintaining class action status throughout the trial." *Extreme Networks,* 2019 WL 3290770, at *8 (citing *Hanlon,* 150 F.3d at 1026). Courts favor settlement as it conserves valuable resources and avoids further "protracted and uncertain litigation" and "subsequent appeals." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 527 (C.D. Cal. 2004). "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Riker v. Gibbons,* 2010 WL 4366012, at *4 (D. Nev. Oct. 28, 2010) (citing 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11:50 (4th ed. 2002)).

Here, Lead Plaintiff has considered the many costly milestones that remain in this litigation. As an initial matter, "securities fraud class actions are complex cases that are time-consuming and difficult to prove." *Rentech,* 2019 WL 5173771, at *6; *Extreme Networks,* 2019 WL 3290770, at *8 ("Securities actions in particular are often long, hard-fought, complicated, and extremely difficult to win"). Indeed, complex securities fraud class actions such as this one present myriad risks that plaintiffs must overcome in order to ultimately secure a recovery. *See, e.g., In re Oracle Corp. Sec. Litig.,* 627 F.3d 376, 395 (9th Cir. 2010) (affirming summary judgment in favor of defendants where plaintiff failed to establish a triable issue on loss causation); *In re Neopharm, Inc. Sec. Litig.,* 705 F.Supp.2d 946, 966 (N.D. Ill. 2010) (granting partial summary judgment where plaintiffs failed to prove material falsity or scienter). While Plaintiff must prove all elements of its claims to prevail, Defendants need only succeed on one defense to potentially defeat the entire action. The uncertainty created by these circumstances weighs in favor of approving the Settlement.

Moreover, while Lead Plaintiff strongly believes in the merits of this case, it is cognizant of the risk that continued litigation could end in no recovery at all. Defendants had strong arguments that their statements were not false, and that they

did not act with scienter.  Specifically, Defendants would have argued that they did not know the exact details about the USAA website redesign until very shortly before that redesign was implemented and did not know the impact that such redesign would have on the Company.  Defendants also had arguments that there were myriad other factors that contributed to the reduction in guidance that the Company announced at the end of the Class Period, including a difficult sales environment and significant adverse weather affecting car sales during the important summer selling season, all of which made forecasting sales more challenging for TrueCar.  Thus, Defendants have denied and vigorously defended against Lead Plaintiff's allegations and would continue to do so should this Action proceed to trial.

Lead Plaintiff believes that it would have advanced strong arguments in response, including that Defendants knew by the start of the Class Period that USAA would be making significant changes to the website, and that such changes would likely negatively impact the Company's business.  However, there is no question that a jury could determine that Defendants' statements were not false when made.  Absent settlement now, the Parties may face years litigating this action to a final resolution, including further discovery, dispositive motions, trial, and likely post-trial appeals.  *Sudunagunta v. NantKwest, Inc.,* 2019 WL 2183451, at *4 (C.D. Cal. May 13, 2019) (finding the likelihood of "further deposition and expert discovery, motion practice, trial, and potentially appeals following trial" to favor settlement); *In re Vivendi Universal, S.A., Sec. Litig.*, 2012 WL 362028, at *1 (S.D.N.Y. Feb. 6, 2012) (noting that, two years after jury verdict in plaintiffs' favor and ten years after the case was filed, shareholders had still received no recovery).[2]

---

[2] *See also In re Omnivision Tech. Inc.*, 559 F.Supp.2d 1036, 1041 (N.D. Cal. 2008) ("[M]erely reaching trial is no guarantee of recovery"); *Nat'l Rural Telecomms.*

Furthermore, given the Company's current stock price, market capitalization and lowered financial status, Defendants would have had little ability to pay a full judgment in this case.  There was a risk that, even if Lead Plaintiff prevailed on all issues through the remainder of the litigation and secured a verdict at trial, such a victory might be meaningless to the Class because they would not be able to recover on that judgment.

Taking this into account, further litigation carries a great amount of risk and burden to both parties.  Indeed, no matter how efficiently the Action is handled, the Parties would have to spend a considerable sum to see this complex case to completion, with no assurance that a greater recovery would be obtained.  In light of these considerations, settlement is less risky, less expensive and less time-consuming, while providing a certain and beneficial result, favoring approval.  *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992).

### 3. The Proposed Method for Distributing Relief to the Settlement Class is Effective

The Court must consider "the effectiveness of [the] proposed method of distributing relief to the class." Fed. R. Civ. P. 23(e)(2)(C)(ii). Here, as demonstrated below in Section III, the method for processing Settlement Class Members' claims and distributing relief to eligible claimants include well-established, effective procedures for processing claims submitted by potential Settlement Class Members and efficiently distributing the Net Settlement Fund. Epiq Class Action & Claims Solutions, Inc. ("Epiq"), the Court-approved Claims Administrator, will process claims under the guidance of Lead Counsel, allow claimants an opportunity to cure any deficiencies in their claims or request the Court to review a denial of their claims, and, lastly, mail Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation), after

*Coop.*, 221 F.R.D. at 527 ("even if [a jury] did reach unanimous verdicts, it is likely that an appeal would have followed").

Court-approval. Claims processing like the method proposed here is standard in securities class action settlements as it has been long found to be effective. *Hefler II*, 2018 WL 6619983, at *7 ("The Court further finds that the proposed claims process provides an effective method of implementing that plan by ensuring that the claimant provides sufficient information to calculate the recognized loss amount. Therefore, this factor weighs in favor of approval").

### 4.   Lead Counsel's Fee and Expense Request is Fair and Reasonable

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." As detailed in the accompanying Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, Lead Counsel seek an award of attorneys' fees of 25% of the Settlement Fund and $424,910.42 in expenses, which include eDiscovery costs and costs of retaining experts. This falls within the 25-percent benchmark rate for attorney's fee awards in the Ninth Circuit and is consistent with awards in similar complex class action cases. *See, e.g., Loritz v. Exide Techs.,* 2016 WL 7246076, at *1 (C.D. Cal. June 15, 2016) (Wilson, J.) (awarding 25% and over $1.58 million in costs); *Unutoa v. Interstate Hotels & Resorts, LLC*, 2016 WL 7496127, at *5 (Wilson, J.) (awarding 25% and requested costs) (C.D. Cal. Aug. 23, 2016).

Moreover, Plaintiffs' Counsel's lodestar is in excess of the requested 25% of the Settlement Fund and would therefore represent a <u>negative</u> multiplier of 0.73. Accordingly, a lodestar cross-check would support the reasonableness of such a fee request. *See, e.g., Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052-54 (9th Cir. 2002) (concluding that multipliers most commonly fall range from 1.0 to 4.0); *Canh Le v. DIRECTV, LLC,* 2018 WL 5928192, at *2 (C.D. Cal. May 15, 2018) (Wilson, J.) ("a negative multiplier in this context suggests that the requested fee award is reasonable").

Further, as explained in the Notice, Lead Plaintiff also requests $5,000 for reimbursement for its time and expenses in representing the Class. *See e.g. In re Omnivision Technologies, Inc.,* 559 F. Supp. 2d 1036, 1049 (N.D. Cal. 2008) (reimbursing lead plaintiffs for "time and expenses" in the amount of $29,913.80).

### 5. The Parties Have No Side Agreements Besides Opt-Outs

Rule 23(e)(2)(C)(iv) requires the disclosure of any side agreement. The Stipulation noted that the parties entered into a confidential supplemental agreement which provides that if Settlement Class Members opt out of the Settlement such that the number of shares of TrueCar common stock represented by such opt outs equals or exceeds a certain amount, TrueCar shall have the option to terminate the Settlement. Stipulation ¶9.2. Such agreements are common in securities class actions, and do not weigh against final approval. *In re Carrier IQ, Inc. Consumer Privacy Litig.*, 2016 WL 4474366, at *5 (N.D. Cal. Aug. 25, 2016) ("opt-out deals are not uncommon as they are designed to ensure than an objector cannot try to hijack a settlement in his or her own self-interest").

### 6. All Settlement Class Members are Treated Equitably

Rule 23 also requires consideration of whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). As described herein, the proposed Plan of Allocation is fair, reasonable and adequate because it does not treat Plaintiff or any other Class Member preferentially. *See In re Zynga Inc. Sec. Litig.*, 2015 WL 6471171, at *10 (finding the plan of allocation "distributes the funds without giving undue preferential treatment to any class members"). Under the Plan, Class Members who have submitted timely claims will receive payments on a *pro rata* basis based on the value of their original claim and the number of claims filed. Lead Plaintiff, just like all other Class Members, will be subject to the same formulas for distribution of the Settlement. Thus, this factor weighs in favor of approval. *See PPG*, 2019 WL 3345714, at *6.

### D. The Extent of Discovery Completed and the Stage of the Proceedings Favor Final Settlement Approval

The stage of the proceedings and the amount of discovery completed are also factors courts consider in determining the fairness, reasonableness, and adequacy of a settlement. *See NantKwest*, 2019 WL 2183451, at *4 (finding "review and analysis of over 140,000 pages of documents" and "extensive adversarial motion practice, including motions to dismiss and class certification" supportive of final approval).

Lead Plaintiff's decision to enter into the Settlement was based on its thorough understanding of the strengths and weaknesses of its claims and Defendants' defenses garnered through Lead Plaintiff's diligent prosecution of the Action, which included, among other things: (i) conducting an extensive factual investigation, including identifying, contacting and interviewing former employees with knowledge of the facts; (ii) drafting the Amended Complaint subject to the heightened pleading standards of the PSLRA; (iii) consulting with experts; (iv) successfully opposing Defendants' motion to dismiss; (v) conducting extensive fact discovery, which included seeking and obtaining over 3.5 million pages of documents from Defendants and various third parties, briefing and arguing Lead Plaintiff's motion to compel Defendants' production of responsive Slack data, as well as defending and preparing for depositions; (vi) successfully litigating Lead Plaintiff's class certification motion; and (vii) preparing for and participating in two mediation sessions before widely-respected mediators. This factor clearly weighs in favor of final approval of the Settlement. *STAAR Surgical Co.*, 2017 WL 4877417, at *4 (holding that it "weighs in favor final settlement approval" where the "parties engaged in extensive adversarial motion practice, including regarding class certification and discovery disputes" and "researched, prepared, and drafted comprehensive mediation briefs").

### E.     The Risk of Maintaining a Class Action Supports Approval

While the Court has granted class certification, its order is conditional, as Rule 23(c)(1) expressly provides that a class certification order may be "altered or amended before final judgment." *Fed. R. Civ. P. 23(c)(1); see, e.g., Vizcaino v. U.S. Dist. Court,* 173 F.3d 713, 721 (9th Cir. 1999) (certification order may be altered or amended "'before the decision on the merits'"). If the Action were to proceed, Defendants may succeed in modifying or decertifying the Class. Indeed, Defendants would have vigorously argued at summary judgment and trial that the Class Period should not begin until August 2017 (or even later), which is when they argued that they began to realize that the website redesign was negatively impacting their business.   Therefore, this factor weighs in favor of granting final approval.   *See e.g. In re Immune Response Sec. Litig.,* 497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007) (finding risk that defendants would attempt to shorten class period based on evidence produced during discovery supported settlement).

### F.     The Experience and Views of Counsel Favor Settlement

The recommendation of experienced counsel in favor of settlement carries a "great deal of weight" in a court's determination of the reasonableness of a settlement.   *Immune*, 497 F. Supp. 2d at 1174.   Lead Counsel has significant experience in securities and other complex class action litigation and has negotiated numerous other substantial class action settlements throughout the country.   Lead Counsel has been an integral part of many settlements of this nature, and, in their estimation, this Settlement is an excellent result because it provides the Settlement Class with genuine relief under difficult legal and practical circumstances. *Extreme*, 2019 WL 3290770, at *9 ("That such experienced counsel advocate in favor of the settlement weighs in favor of approval").

At the time that the Parties agreed to the Settlement—after intense litigation and extensive discovery on an expedited schedule—Lead Counsel had obtained a

thorough understanding of the strengths and weaknesses of the claims and defenses in this case. *NantKwest*, 2019 WL 2183451, at *5 (favoring final approval as "Counsel have conducted detailed discovery in this action, filed numerous motions for Plaintiffs and the class, and engaged in extensive mediated negotiations before ultimately reaching and recommending this Agreement"). It is Lead Counsel's informed opinion that given the risks and uncertainties inherent in this complex securities class action litigation, the proposed settlement is fair, reasonable and adequate and in the best interest of the Settlement Class. "Based on counsels' knowledge of the specific facts of this action, experience in settlements such as this, and opinion that the Settlement is fair, reasonable, and adequate," this factor weighs in favor of final settlement approval. *Harris v. U.S. Physical Therapy, Inc.*, 2012 WL 3277278, at *7 (D. Nev. July 18, 2012).

### G.   <u>The Positive Reaction of the Class Supports Settlement Approval</u>

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528-29; *see also Churchill Village LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming settlement with 45 objections out of 90,000 notices sent).

Here, the deadline for submission of objections to the Settlement, or exclusion requests, is January 6, 2020. To date, after an extensive notice program (*see* Epiq Decl. ¶¶3-18), the parties have received no objections or exclusion requests, which strongly weighs in favor of final approval. Epiq Decl. ¶¶19-22.[3] "Many potential class members are sophisticated institutional investors; the lack of

---

[3] Should any objections be received after the date of this submission, they will be addressed by Lead Counsel in a reply brief with the Court due January 20, 2020.

objections from such institutions indicates that the settlement is fair and reasonable." *Extreme*, 2019 WL 3290770, at *9.

Moreover, the approval of Lead Plaintiff, a sophisticated institutional investor with a substantial financial stake in the litigation, which was closely involved throughout the litigation and the settlement negotiations, also supports approval of the Settlement. *See City of Providence v. Aeropostale, Inc*., 2014 WL 1883494, at *4 (S.D.N.Y. May 9, 2014) ("the recommendation of Lead Plaintiff, a sophisticated institutional investor, also supports the fairness of the Settlement"); Ex. A. to Hooker Declaration at ¶¶5, 15.

In sum, as discussed in detail above, each of the Rule 23(e)(2) and *Hanlon* factors support a finding that the Settlement is fair, reasonable, and adequate. Final approval is, therefore, appropriate.

## III.   NOTICE TO THE SETTLEMENT CLASS SATISFIED THE REQUIREMENTS OF RULE 23, DUE PROCESS, AND THE PSLRA

Upon approval of the Settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the [proposed settlement]." Fed. R. Civ. P. 23(e)(1).  As such, the rule requires that "[i]ndividual notice must be sent to all class members whose names and addresses may be ascertained through reasonable effort."  *Rentech*, 2019 WL 5173771, at *8 (C.D. Cal. Oct. 10, 2019).  To comport with due process, "notice must be the best practicable, 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"  *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) (quoting *Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950)).  Additionally, "[s]ettlement notices are supposed to present information about a proposed settlement neutrally, simply, and understandably [.]" *Rodriguez v. West. Pub. Corp*., 563 F.3d 948, 962 (9th Cir. 2009).

Similarly, the PSLRA imposes notice requirements. *See* 15 U.S.C. § 78u-4(a)(7). Under the PSLRA, any proposed final settlement agreement "shall include each of the following statements, along with a cover page summarizing the information contained in such statements:" a statement of plaintiff recovery, a statement of potential outcomes of the case, a statement on attorneys' fees or costs, identification of lawyers' representatives, reasons for the settlement, and other information as required by the court. *Id.*

Here, Lead Plaintiff selected Epiq, an experienced and diligent claims administrator, to administrate the notice and claims program.  In connection with the proposed Settlement, the Claims Administrator compiled a list of 1,280 nominees contained in its proprietary nominee database; mailed 3,091 copies of the Notice Packet to potential Settlement Class Members whose names and addresses were received from individuals or nominees; mailed 7,552 Notice Packets to nominees who requested Notice Packets to forward to their customers; and received shareholder lists containing unique names and addresses of 14 additional TrueCar common stock holders during the Class Period, for an aggregate of 11,937 Notice Packets disseminated.  Ex. B to Hooker Decl. (Declaration of Ed Barrero of Epiq) ¶¶3-13.  Epiq published the Summary Notice in *Investor's Business Daily* and over *Business Wire* on November 11, 2019 (*id*. at ¶14); maintained a website, at www.truecarsecuritiessettlement.com, which went "live" on November 4, 2019 (*id*. at ¶¶17-18); and maintained call center services (*id*. at ¶¶15-16). Copies of the Stipulation, Notice, Summary Notice, Claim Form, and Preliminary Approval Order are also available on Lead Counsel's website, www.saxenawhite.com.

The Notice was carefully drafted to contain all necessary information.  All of the information is provided in plain language and in a format that is easily accessible. The Notice clearly advises recipients of their legal rights and obligations in connection with the Settlement, including the right to object to any

portion of the Settlement or submit a completed Proof of Claim to be eligible to share in the Settlement. Contact information for Lead Counsel and the Claims Administrator is provided, as well as a toll-free number and website for the recipient if there are any questions.

Specifically, the Notice informed Settlement Class Members of, among other things: (1) an explanation of the nature of the Action and the claims asserted; (2) the definition of the Settlement Class; (3) the amount of the Settlement; (4) the reasons why the Parties are proposing the Settlement; (5) the estimated average recovery per affected share of TrueCar common stock; (6) the maximum amount of attorneys' fees and expenses that will be sought; (7) the identity and contact information for the representatives of Lead Counsel who are reasonably available to answer questions from Settlement Class Members; (8) Settlement Class Members' right to opt-out of the Settlement Class or to object to the Settlement, the Plan of Allocation or the requested attorneys' fees or expenses; (9) the binding effect of a judgment on Settlement Class Members; and (10) the dates and deadlines for certain Settlement-related events. The Notice also contains the Plan of Allocation and provides Settlement Class Members with information on how to submit a Claim Form in order to be eligible to receive a distribution from the Net Settlement Fund.

Notice programs such as this have been approved in a multitude of class action settlements. *See e.g. Rentech,* 2019 WL 5173771, at *8 (approving mailed notice, published summary notice, and availability of online notice); *Hefler II,* 2018 WL 6619983, at *5 (approving similar notice program); *Destefano v. Zynga, Inc.*, 2016 WL 537946, at *7 (N.D. Cal. Feb. 11, 2016) (finding individual notice mailed to class members combined with summary publication constituted "the best form of notice available under the circumstances"). Moreover, this Court has already found that the proposed notice program is adequate and sufficient. *See*

Preliminary Approval Order at ¶¶4-5.  Lead Counsel and Epiq carried out the notice program as proposed.  Therefore, Lead Plaintiff respectfully submits that the Notice fairly apprises Settlement Class Members of their rights with respect to the Settlement and is the best notice practicable under the circumstances.

## IV.    THE PLAN OF ALLOCATION IS FAIR, REASONABLE AND ADEQUATE

A plan of allocation should be approved where it is "fair, reasonable, and adequate." *City of Seattle*, 955 F.2d at 1284-85; *see also Omnivision*., 559 F. Supp. 2d at 1045. "A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable . . . . It is also reasonable to allocate more of the settlement to class members with stronger claims on the merits." *In re Oracle Sec. Litig*., 1994 WL 502054, at *1 (N.D. Cal. June 18, 1994); *Omnivision*, 559 F. Supp. 2d at 1045 ("It is reasonable to allocate the settlement funds to class members based on the extent of their injuries or the strength of their claims on the merits.").

Here, the Plan of Allocation is found in the Notice (¶¶51-69), which was preliminarily approved by the Court.  In developing the Plan of Allocation, Lead Plaintiff's damages expert calculated the estimated alleged amount of artificial inflation in the per share closing price of TrueCar common stock which allegedly was proximately caused by Defendants' alleged false and misleading statements and material omissions.  Notice ¶52.  In calculating the estimated alleged artificial inflation allegedly caused by Defendants' alleged misrepresentations and omissions, Lead Plaintiff's damages expert considered price changes in TrueCar common stock in reaction to certain public announcements allegedly revealing the truth concerning Defendants' alleged misrepresentations and material omissions, adjusting for price changes that were attributable to market or industry forces.  Notice ¶53.

The Plan of Allocation calculates a "Recognized Loss Amount" for each purchase of TrueCar common stock during the Class Period that is listed in the Claim Form and for which adequate supporting documentation is provided. Recognized Loss Amounts are based primarily on the difference in the amount of alleged artificial inflation in the prices of TrueCar common stock at the time of purchase or acquisition and at the time of sale or the difference between the actual purchase price and sale price. Notice ¶55. Claimants who purchased shares during the Class Period but did not hold those shares through at least the end of the day on November 6, 2017 will have no Recognized Loss Amount as to those transactions because any loss they suffered would not have been caused by the disclosure of the alleged fraud. Notice ¶55. The sum of a claimant's Recognized Loss Amounts for all his, her or its Class Period purchases is the Claimant's "Recognized Claim," and the Net Settlement Fund will be allocated to eligible claimants on a *pro rata* basis based on the relative size of their Recognized Claims. Notice ¶58, 64-65.

The Plan of Allocation is consistent with the damages and loss causation calculations, and takes into account the relative strengths and weaknesses of the claims asserted in the Complaint. The Plan of Allocation provides a reasonable, rational basis for Class Members to recover their *pro rata* damages based upon the dates on which they purchased or sold TrueCar common stock.  The proposed Plan of Allocation also prohibits class members from receiving a windfall by limiting recovery only to those class members who suffered actual losses. *Rentech*, 2019 WL 5173771, at *8 ("Each Class Member's allocation will therefore be proportionate to actual injury. The Court finds that the Plan of Allocation is 'fair, reasonable, and adequate'").  To date, after mailing more than 11,937 Notices, no Class Members have objected to the Plan of Allocation.  This fact supports approval.

## V.   <u>CONCLUSION</u>

For all the foregoing reasons, Lead Plaintiff respectfully requests that the Court approve the proposed Settlement and Plan of Allocation as fair, reasonable, and adequate.

Dated: December 23, 2019                    Respectfully submitted,


                                            **KAPLAN FOX & KILSHEIMER LLP**

                                            By: */s/    Justin B. Farar*

                                            Justin B. Farar (SBN 211556)
                                            12400 Wilshire Boulevard
                                            Suite 820
                                            Los Angeles, CA 90025
                                            Telephone: 310.575.8604
                                            Facsimile: 310.444.1913
                                            Email: jfarar@kaplanfox.com

                                            -and-

                                            Laurence D. King (SBN 206423)
                                            Mario M. Choi (SBN 243409)
                                            1999 Harrison Street, Suite 1560
                                            Oakland, California 94612
                                            Telephone: 415.772.4700
                                            Facsimile: 415.772.4707
                                            Email: lking@kaplanfox.com
                                                   mchoi@kaplanfox.com

                                            Robert N. Kaplan (admitted *pro hac vice*)
                                            Jeffrey P. Campisi (admitted *pro hac vice*)
                                            Jason A. Uris (admitted *pro hac vice*)
                                            850 Third Avenue, 14th Floor
                                            New York, NY 10022
                                            Telephone: (212) 687-1980
                                            Facsimile: (212) 687-7714
                                            Email: rkaplan@kaplanfox.com
                                                   jcampisi@kaplanfox.com
                                                   juris@kaplanfox.com

                                            *Liaison Counsel for Lead Plaintiff and the
                                            Class*

                                            **SAXENA WHITE P.A.**
                                            Maya Saxena
                                            Joseph E. White, III
                                            Lester R. Hooker (241590)
                                            Dianne M. Pitre (286199)

7777 Glades Road, Suite 300
Boca Raton, FL 33434
Telephone:  (561) 394-3399
Facsimile:  (561) 394-3382
E-mail:       msaxena@saxenawhite.com
                   jwhite@saxenawhite.com
                   lhooker@saxenawhite.com
                   dpitre@saxenawhite.com

-and-

Steven B. Singer
Kyla Grant
Sara DiLeo
10 Bank Street, 8th Floor
White Plains, NY 10606
Telephone:  (914) 437-8551
Facsimile:  (888) 631-3611
E-mail:       ssinger@saxenawhite.com
                   kgrant@saxenawhite.com
                   sdileo@saxenawhite.com

*Lead Counsel for Lead Plaintiff and the Class*

**PROOF OF SERVICE VIA ELECTRONIC POSTING PURSUANT TO CENTRAL DISTRICT OF CALIFORNIA LOCAL RULES AND ECF GENERAL ORDER NO. 10-07**

I HEREBY CERTIFY that, on December 23, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all registered users. I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 23, 2019.


*/s/ Justin B. Farar*
Justin B. Farar